TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HAZLET, MONMOUTH COUNTY, PLAINTIFF, AND THOMAS O. KELLY, PLAINTIFF-INTERVENOR, v. JOSEPH A. MORALES AND HAZLET TOWNSHIP SEWERAGE AUTHORITY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 24, 1972.

*Mr. Francis X. Journick,* attorney for plaintiff Township Committee of the Township of Hazlet.

*Mr. Edwin A. Kolodziej,* attorney for plaintiff-intervenor Thomas O. Kelly (*Mr. Dennis M. Lamber,* appearing of counsel).

*Messrs. Saling, Moore, O'Mara & Coogan,* attorneys for defendants (*Mr. John W. O'Mara* appearing of counsel).

LANE, J. S. C. This matter is before the court on a motion for summary judgment on behalf of Thomas O. Kelly, plaintiff-intervenor, a taxpayer and resident of the Township of Hazlet. The complaint in lieu of prerogative writ contests the validity of defendant Joseph A. Morales' appointment as a member of the Hazlet Township Sewerage Authority.

On December 21, 1971 the Township Committee of Hazlet by a 3-2 vote appointed Morales to membership on the Sewerage Authority for the term of December 21, 1971 to January 31, 1975. At the time Morales was a participating

member of the township committee and voted in the affirmative for his own appointment. In the November 1971 election he had been defeated for re-election to the township committee. A member of the Sewerage Authority receives a salary of $1500 a year.

On January 3, 1972 plaintiff township committee commenced this action in lieu of prerogative writ seeking an order declaring the invalidity of defendant Morales' appointment; declaring a vacancy on the Sewerage Authority; restraining defendant Morales from performing any acts as a member of the Sewerage Authority; and restraining defendant Hazlet Township Sewerage Authority from taking any action for which a majority vote of the membership of the Sewerage Authority is necessary where the majority vote in favor would not exist but for the affirmative vote of defendant Morales.

An earlier motion for summary judgment was made by plaintiff township. That motion was denied on the ground, among others, of doubt of the standing of the township committee to institute the action. The earlier denial of the township's motion is not *res judicata* so far as the motion brought on behalf of Kelly which is now before the court.

*N. J. S. A.* 40:14A-1 *et seq.* provides for municipal and county sewerage authorities. *N. J. S. A.* 40:14A-5 provides in part:

(c) * * * neither the holding of any office or employment in the government of any county or municipality or under any law of the State nor the owning of any property within the State shall be deemed a disqualification for membership in or employment by a sewerage authority, and members of the governing body of a local unit may be appointed by such governing body and may serve as members of a sewerage authority. * * *

While *N. J. S. A.* 40:14A-5(c) allows a member of a governing body to serve as a member of a sewerage authority (see *N. J. S. A.* 40:46-5, prohibiting generally such dual appointments, and *O'Keefe v. Dunn,* 89 *N. J. Super.* 383 (Law Div. 1965), aff'd o. b. 47 *N. J.* 210 (1966), holding

that a statute allowing membership on a governing body and on a housing authority was an exception to the general provisions of *N. J. S. A.* 40:46–5), plaintiff argues that *N. J. S. A.* 40:14A–5(c) does not permit a member of a governing body to vote for himself for such appointment.

A public officer has the duty of serving the public with undivided loyalty, uninfluenced in his official actions by any private interest or motive whatsoever. He holds a position of public trust. He is under an inescapable obligation to serve the public with the highest fidelity, good faith and integrity. The law tolerates no mingling of self-interest; it demands exclusive loyalty. *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 474–475 (1952), cert. den. *Burlington County Bridge Commission v. Driscoll,* 344 *U. S.* 838, 73 S. Ct. 25, 97 *L. Ed.* 652 (1952); *Newton v. Demas,* 107 *N. J. Super.* 346, 349 (App. Div. 1969), cert. den. 55 *N. J.* 313 (1970); *Aldom v. Roseland,* 42 *N. J. Super.* 495, 500–501 (App. Div. 1956).

A member of a municipal governing body may be disqualified from voting on a matter in which he is personally interested. See *Griggs v. Princeton Borough,* 33 *N. J.* 207, 219–220 (1960); *Van Itallie v. Franklin Lakes,* 28 *N. J.* 258, 267 (1958); *McNamara v. Saddle River,* 64 *N. J. Super.* 426, 429 (App. Div. 1960); *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 50; *Piggott v. Hopewell,* 22 *N. J. Super.* 106, 110 (Law Div. 1952). See generally, Annotation, "Member of governmental board voting on measure involving his personal interest," 133 *A. L. R.* 1257 (1941).

Generally, whether a particular interest is sufficient to disqualify is factual, depending upon the circumstances of the particular case. *Van Itallie v. Franklin Lakes, supra,* 28 *N. J.* at 268; *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 503. The question is always whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty. *Griggs v. Princeton Borough, supra,* 33 *N. J.* at 219; *Van Itallie v. Franklin Lakes, supra,* 28 *N. J.* at 268.

Actual proof of dishonesty need not be shown. *LaRue v. East Brunswick,* 68 *N. J. Super.* 435, 447 (App. Div. 1961); *S. & L. Associates, Inc. v. Washington Tp.,* 61 *N. J. Super.* 312, 329 (App. Div. 1960), aff'd in part, rev'd in part 35 *N. J.* 224 (1961); *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 503.

The interest which disqualifies is a personal or private one, not such an interest as the public officer has in common with all other citizens. *Kramer v. Bd. of Adjust., Sea Girt,* 45 *N. J.* 268, 282 (1965); *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 507; *Piggott v. Hopewell, supra,* 22 *N. J. Super.* at 111.

In *Aldom v. Roseland, supra,* Justice, then Judge, Francis said:

> The interest which disqualifies is not necessarily a direct pecuniary one, nor is the amount of such an interest of paramount importance. It may be indirect; it is such an interest as is covered by the moral rule: no man can serve two masters whose interests conflict. Basically the question is whether the officer, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes to the prejudice of those for whom the law authorizes him to act as a public official. And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect. Such an approach gives recognition to the moral philosophy that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action. * * * [42 *N. J. Super.* at 502]

However, a remote and speculative interest will not be held to disqualify. See *Van Itallie v. Franklin Lakes, supra,* 28 *N. J.* at 269.

In most cases in which it has been held that a public officer had a disqualifying interest, a direct or indirect pecuniary or other benefit to the official himself or to a relative or employer was involved. See *Griggs v. Princeton Borough, supra,* 33 *N. J.* at 207 (University was principal stockholder of a corporation which would benefit by the designation of a particular area as "blighted"; determination by borough

council was voided because two of the participating council-men were professors of the University); *Pyatt v. Mayor, etc., Dunellen,* 9 *N. J.* 548 (1952) (zoning ordinances voided where councilmen voting for enactment were employees of a corporation substantially benefited); *S. & L. Associates, Inc. v. Washington Tp., supra,* 61 *N. J. Super.* at 312 (zoning amendment enhancing value of property owned by certain participating members of the governing body invalidated); *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 503 (zoning ordinance voided where employer of councilman who voted for enactment would be benefited); *Hochberg v. Freehold,* 40 *N. J. Super.* 276, 283 (App. Div.), certif. den. 22 *N. J.* 223 (1956) (zoning amendment permitting enlargement of a horse track at which a participating councilman operated a horsemen's kitchen voided). But see *Van Itallie v. Franklin Lakes, supra,* 28 *N. J.* at 258 (zoning amendment upheld although participating councilman's brother held a "lower echelon" position in a benefited corporation); *Wilson v. Long Branch,* 27 *N. J.* 360, cert. den. 358 *U. S.* 873, 79 S. Ct. 113, 3 *L. Ed.* 2d 104 (1958) (resolution by governing body designating area as blighted upheld although two members of planning board were officers in an institution which held mortgages on property within the area and a third member was a health official and lived 300 feet from the area).

In dealing with the issue of disqualifying self-interest, the courts frequently have made a distinction between *quasi-judicial* action and legislative action. See *Pyatt v. Mayor, etc., of Dunellen, supra,* 9 *N. J.* at 554, 555; *Bd. of Ed. of West Orange v. International Union Eng.,* 109 *N. J. Super.* 116, 120 (App. Div. 1970); *Aldom v. Roseland, supra,* 42 *N. J. Super.* at 508; *Piggott v. Hopewell, supra,* 22 *N. J. Super.* at 110–111. The implication is that if the municipal action is legislative in nature, it may not be interfered with except upon a showing that it is tainted with fraud, or palpably not in the service of the public interest, or otherwise a clear perversion of power. If the municipal action is *quasi*-judicial, it may be voided upon a showing of self-interest.

There may be some question as to whether the appointment of a member to the sewerage authority was *quasi-judicial*. However, even if such action was legislative, there is no reason not to void the action if disqualifying self-interest on the part of a participating member is shown. Certainly participation on a public matter by a municipal official with a direct self-interest would be a perversion of power and palpably not in the public interest.

In *Grimes v. Miller*, 113 *N. J. L.* 553 (Sup. Ct. 1934), plaintiff challenged an appointment of the mayor of Clifton to the Passaic Valley Water Commission. A resolution providing for such appointment had been offered to the city council. Action thereon resulted in a tie vote. The resolution was thereafter sent to the mayor for his approval or disapproval. As a result of his inaction the resolution had the effect as if it had been passed by the city council. The court characterized the mayor's failure to act as equal to an affirmative vote by him appointing himself to office. The court held that the action by the mayor violated the provisions of *L.* 1917, *c.* 152 (now *N. J. S. A.* 40:46–5). The court further found that the mayor was disqualified from participation in his own election because of self-interest. Justice Perskie said:

Moreover, it is elementary, fundamental and grounded in sound public policy that personal interest, such as here, creates the disqualification. In the case of *Kuberski v. Haussermann*, 113 *N. J. L.* 162, 168; (*Stevens* (*Kuberski*) *v. Haussermann*, 172 *Atl. Rep.* 738, 741), Mr. Justice Heher, speaking for this court, said:

'His personal interest created the disqualification. Generally, public policy forbids the participation of a member of a municipal governing body in any matter before it which directly or immediately affects him individually. Considerations of public policy require the acceptance of a resignation to make it effective. This requirement is designed to safeguard the public interest, and it follows, as a necessary consequence, that the officer tendering his resignation cannot participate in the proceedings or action taken thereon. In the clash of interests — those of the public and the officer who seeks to resign his post — the action to be taken must be determined by a disinterested body.'

In 46 *C. J.* 940, § 43(10), *tit. "Officers,"* it is stated:

'It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint; nor can an appointing board appoint one of its members to an office, even though his vote is not essential to a majority in favor of his appointment, and although he was not present when the appointment was made, and notwithstanding his term in the appointing body was about to expire; nor can the result be accomplished indirectly by his resignation with the intention that his successor shall cast his vote for him. A statute declaratory of this rule of the common law will be construed liberally so as to give as broad a scope to the remedy provided by it as the language used will justify. Thus remaining in office by the sufferance of the appointing board will not cure such a disability.'

'It is contrary to the public policy to permit an officer having the power to appoint to office to exercise that power in his own interest by appointing himself.' *Mechem's Public Offices and Officers* (edition 1890), § 112.

The mayor could not break the tie vote by actually and physically casting a vote in favor of the resolution of his appointment. It, therefore, seems clear to us that he sought to avoid or overcome the objection of a direct vote by taking no action. We fail to see any difference between his casting an affirmative vote and his refraining from voting. The latter, by statute, is the equivalent of the former. In either event the result is the same; it is wrong and contrary to law. [113 *N. J. L.* at 558–560]

Defendants argue that *Grimes, supra,* has been distinguished by *O'Keefe v. Dunn, supra,* 89 *N. J. Super.* at 383, and that *O'Keefe* should apply. In that case plaintiff brought an action in lieu of prerogative writs contesting the right of the Mayor of Elizabeth to veto plaintiff's appointment to the local housing authority. Defendants counterclaimed, challenging plaintiff's eligibility for appointment to the housing authority since he was as well a member of the city council. Plaintiff was appointed by resolution by the city council, of which plaintiff was a participating member, by a vote of 8 to 0. Defendant's argument was that *N. J.*

*S. A.* 40:46–5 prohibited plaintiff from serving as a member of the housing authority at the same time he was a member of the governing body. That statute prohibits any member of a governing body from being eligible for appointment to any office required to be filled by the governing body of which he is a member unless the office is required by law to be filled by a member of the governing body. The court interpreted the Housing Authority Act (*N. J. S. A.* 55:14A–6) as providing for such dual appointment. It held that the provisions of *N. J. S. A.* 55:14A–6 created an exception to *N. J. S. A.* 40:46–5 and that plaintiff was not prohibited from being appointed to the housing authority.

Defendants argue further that *Grimes v. Miller, supra,* 113 *N. J. L.* at 553, is "in large measure" founded on *L.* 1917, *c.* 152 (now *N. J. S. A.* 40:46–5). They then argue that the rationale in *O'Keefe v. Dunn, supra,* 89 *N. J. Super.* at 383, finding *N. J. S. A.* 55:14A–6 an exception to *N. J. S. A.* 40:46–5, should be applied; and if *N. J. S. A.* 40:46–5 is inapplicable, *Grimes, supra,* will be inapplicable.

Their argument fails because in *Grimes, supra,* while the court did mention a violation of *L.* 1917, *c.* 152, it is clear that the primary reason for the court's holding was the finding of a disqualifying self-interest arising from the mayor's effective self-appointment to office, whereas, the primary issue in *O'Keefe, supra,* was plaintiff's eligibility as a member of the governing body to hold the particular position appointed by that governing body.

■■ *Grimes, supra,* is clearly applicable to the present case. The fact that *N. J. S. A.* 40:14A–5 allows a member of the governing body to be appointed by that governing body as a member of the sewerage authority does not validate such an appointment where the interested member voted for himself, such vote being essential to the appointment. Being in a position to appoint one's self to a public office or position is clearly of that class of self-interest which disqualifies. A municipal official in such a situation is not likely to act purely out of undivided loyalty to the public.

Defendant further argues that the issue of disqualifying self-interest raises genuine issues of material fact.

While generally whether a particular interest disqualifies is factual depending on the circumstances of the case, under the test of whether the circumstances could reasonably be interpreted to show likely capacity to tempt, *Van Itallie v. Franklin Lakes, supra,* 28 *N. J.* at 268, there can be no factual dispute in this case. Defendant's vote directly benefited his own interests. In effect he appointed himself. His conduct *per se* disqualifies his vote and invalidates his appointment. *Grimes v. Miller, supra,* 113 *N. J. L.* at 553. *Cf. Driscoll v. Burlington-Bristol Bridge Co., supra,* 8 *N. J.* at 474.

It might perhaps be argued that the appointment to the Sewerage Authority pays only $1500 a year and requires a great deal of thankless work and that these circumstances certainly could not reasonably show a likely capacity to tempt defendant from his sworn duty. As a matter of public policy and under *Grimes, supra,* no public official should be allowed to vote on his own appointment to a public office or position, regardless of the nature of that job. This holding may cause procedural problems within a local government, for example, lack of quorum because of a member's disqualification. Such problems, however, are inconsequential compared to the public policy of having governing officials act with undivided loyalty for their constituents.

There is no genuine issue of material fact. Plaintiff is entitled to summary judgment declaring that the appointment of Joseph A. Morales to the Hazlet Township Sewerage Authority is void and that a vacancy exists therefore on the Sewerage Authority. The other relief sought in the complaint is superfluous.