[No. 43540.   En Banc.   December 4, 1975.]

LOCAL UNION 1296, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, *Appellant*, v. THE CITY OF KENNEWICK, *Respondent*.

*Critchlow, Williams, Ryals & Schuster*, by *David E. Williams*, for appellant.

*Horton, Wilkins & Faurholt,* by *Hugh B. Horton,* for respondent.

WRIGHT, J.—This appeal deals with the validity of an arbitration proceeding.

There were negotiations between the respondent herein, the City of Kennewick, and the appellant, a regularly qualified collective bargaining representative of the city firefighters. The parties could not reach an agreement on some matters and after efforts to negotiate, the disputed items were submitted to arbitration under the provisions of RCW 41.56. The parties each submitted to the Director of Labor and Industries a list of three names. The director appointed from the list submitted by the union David E. Williams, an attorney with offices in Richland. The director also received a list from the City and from that list appointed Wesley N. Wilson, an attorney with offices in Yakima. The director appointed Roger Buchanan, then a resident of Olympia and a professional in the field of labor relations as the third or neutral member of the arbitration panel.

Thereafter, on March 11 and 12, 1974, the arbitration hearings were held in the offices of the Department of Labor and Industries in Kennewick. Both sides were fully heard. Thereafter, more testimony was needed as to hours of work. That hearing was held in Richland on April 9, 1974, and testimony was received from James I. Deines, the city's fire chief, and from one Larry Sleater, a fireman. The Richland location for the hearing was selected by Mr. Buchanan. After hearing the additional evidence, the panel went into executive session to consider its decision.

After considerable time spent discussing the matter, Buchanan announced his decision in executive session. The decision, while initially oral, was later reduced to writing. There was never any change from the substance of that original decision. The written statement of his oral decision is as follows:

(1) With respect to the issue of *wages,* the matter should be determined on the basis of the memo signed by Colby

and Comstock on 11-12-73, effective 4-1-74, and that the plan set forth by the city should become effective on 7-1-74 and that there should be an additional 3% increase effective 1-1-74, plus the COL arrangement referred to in such memo.

(2) With respect to the question of *life insurance*, the existing program should remain in effect.

(3) With respect to *medical insurance*, the parties should adopt the "Pasco plan."

(4) With respect to *sick leave*, it should remain at 12 hours, but 25% of accumulated leave should be allowed; leave should be taken and charged by the hour.

(5) With respect to a *dental plan*, it should be included per the memo aforesaid.

(6) With respect to *overtime*, it should be handled per such memo.

(7) With respect to *holidays*, the existing arrangements should remain in effect.

(8) With respect to *work week*, the parties should go to 49 hours, effective January 1, 1975, with commensurate restrictions on taking of "Kelly days."

(9) The employer should be granted an "employer rights" clause, reading essentially as follows: "The Union recognizes that it is the function of the City to operate and manage its affairs in all respects in accordance with its responsibilities. Therefore, subject only to the provisions of this Agreement, those functions concerned with management and operation of the Fire Department are reserved to the City."

After the arbitrators emerged from executive session they were in the company of Chief Deines and Fireman Sleater. Buchanan required transportation to the Pasco airport. It was discussed and Williams was unwilling to drive Buchanan to the airport as he (Williams) was anxious to get home. Wilson said his route would be in the opposite direction and it would be inconvenient for him to go to the airport. Williams then asked Sleater to take Buchanan to the airport and Sleater did so.

Upon their arrival at the Pasco airport, Sleater and Buchanan had four drinks each in the bar. Each bought two drinks for himself and two for the other person. This took place during a period variously estimated from 45 minutes

to 2 hours. The findings of fact place the time at from 1½ hours to 1 hour and 45 minutes. Both Buchanan and Sleater agree that the arbitration was never discussed between them.

No one raised any objection to the arrangements for Sleater taking Buchanan to the airport, although it was known to and discussed by Williams, Wilson and Chief Deines, as well as Sleater and Buchanan.

The City has sought to avoid the award of the arbitrators because of the drinking incident at the airport. The City relies primarily upon a number of cases in the field of zoning in which the "appearance of fairness" doctrine has been applied. Two actions were filed in the Superior Court for Benton County, which actions were consolidated. The consolidated cases were tried and the court decided the arbitration should be overturned only because the incident at the airport violated the appearance of fairness.

Other matters were presented to the trial court. All of the other questions were decided in favor of the validity of the arbitration, and the City did not cross-appeal. We, therefore, do not consider those questions.

Findings of fact Nos. 11 through 22 relate to the matter now before the court. Those findings are set forth in full:

XI

That on April 9, 1974, the arbitrators met to discuss their decision. That at a portion of that evening, one of the negotiators for the Union, a Larry Sleater, and Chief Deines were present and met with the arbitrators. That at the end of the evening, Mr. Williams requested Mr. Sleater to take the neutral arbitrator to the airport. That this request was in the presence of the arbitrator representing the interests of the City.

XII

That upon the arrival of the neutral arbitrator, Roger Buchanan, and Larry Sleater, the two went into a bar at the Pasco Airport and were drinking together for a period of one and one-half to one and three-quarter hours. During this period of time, Sleater and Buchanan were alone. They each drank four drinks at the cocktail lounge, with Buchanan buying two drinks for Sleater and

two drinks for himself, and Sleater, in turn, buying two drinks for Buchanan and two for himself.

### XIII

That Fireman Sleater was on the negotiating team for the Union and was a witness at the arbitration proceedings. He was a key fireman.

### XIV

Roger Buchanan was the neutral arbitrator and the one with ultimate responsibility in the award.

### XV

On April 9, 1974, there was no permanent or final decision by the arbitrators. Drafts were still to be submitted by both Mr. Williams and Mr. Wilson, and there were some four later telephone conversations between the City arbitrator, Mr. Wilson, and Mr. Buchanan.

### XVI

That while Mr. Buchanan states it is normal and accepted practice for a neutral arbitrator to drink and socialize with one of the parties to an arbitration award and that it makes no difference at which stage of proceedings arbitrations are at the time, this is astounding and contrary to the guidelines of the National Labor Relations Board.

### XVII

That a few days later, a rumor arose that the Union had the arbitrator in its hip pocket, or words to this effect. That on April 16th, Mr. Wilson called Mr. Buchanan and made protest concerning this rumor and asked Buchanan to call Williams, and Williams in turn to contact Sleater, and have Sleater issue a memorandum denying the content of this rumor. No such denial was made.

### XVIII

That subsequently the rumor appeared in the local newspaper concerning the drinking episode and the position taken by the City relative to it. That Mr. Sleater made it a point to call Mr. Buchanan concerning this. That this indicates there was a feeling of rapport by Mr. Sleater to Mr. Buchanan.

### XIX

That the Court finds the drinking episode between Mr. Buchanan and Mr. Sleater could have had a bearing on the decision.

## XX

That the award of the arbitrators reflects language such as that the negotiators signed "on behalf of the employer, City of Kennewick", and that this was the "employer's proposal" and that the negotiators Memorandum of Understanding was the "City of Kennewick's proposal", and that this was an "Agreement between the employer, City of Kennewick, and the Union", and "was a proper good and valid agreement". That the Memorandum of Understanding was at no time a City of Kennewick proposal or a proper, good and valid agreement, and that the language shows either bad language or an indication of partiality by Mr. Buchanan insofar as the Firemen are concerned.

## XXI

That the Memorandum of Understanding was not treated by the arbitrators as binding, but simply an important document of evidence. Because of this, the errors in language do not in themselves form a basis for a vacation of award but do raise suspicion about the partiality of Mr. Buchanan.

## XXII

That the acts and actions of Mr. Buchanan show incredible indiscretion and there is an inference of evidence of partiality on Mr. Buchanan's part.

Appellant (union) challenges only findings Nos. 19, 20 and 22. Finding No. 19 is that the episode at the airport "could have had a bearing on the decision." Finding No. 20 suggests a possibility that the language relative to the agreement between the City manager and the union might be an indication of partiality by Mr. Buchanan. Finding No. 22 is to the effect that the incident at the airport inferred partiality. The findings of fact are supported by evidence and we accept as verities all that are truly findings of *fact*. "We are firmly committed to the rule that the findings of fact of the trial court will not be disturbed on appeal if evidence is present in the record to support the findings." *Sylvester v. Imhoff*, 81 Wn.2d 637, 639, 503 P.2d 734 (1972). This rule is not of recent origin. *Baker v. McAllister*, 2 Wash. Terr. 48, 3 P. 581 (1880).

It is, however, the function of any appellate court to

determine questions of law. If what is in fact a conclusion of law is wrongly denominated a finding of fact, it is, nevertheless, subject to review. *State v. Washington Tug & Barge Co.*, 140 Wash. 613, 250 P. 49 (1926).

■ No necessity exists to discuss in detail the so-called "findings" because the trial court proceeded on a fundamentally wrong theory. We said in *Harrison v. Consolidated Holding Co.*, 200 Wash. 434, 441, 93 P.2d 729 (1939), "In any event, as the trial court decided the case upon the wrong theory, the judgment appealed from should be reversed . . ."

■■ The arbitration procedure used herein is purely statutory. The provisions for this special form of arbitration are found in RCW 41.56.030 through .910 which are derived from Laws of 1973, ch. 131. A special method of selection of the arbitrators is provided in RCW 41.56.450. It is provided in the same section that the arbitration panel shall be deemed a state agency. In a statutory proceeding the statute is controlling.

The final sentence of the same section (RCW 41.56.450) reads:

> The decision made by the panel shall be final and binding upon both parties, subject to review by the superior court upon the application of either party *solely* upon the question of whether the decision of the panel was arbitrary or capricious.

(Italics ours.)

It follows, therefore, that unless the trial court found the decision was arbitrary and capricious the trial court decided the case upon the wrong theory. The trial court did not make any finding that the award of the arbitration panel was arbitrary and capricious. In fact, the court stated there was nothing wrong with the result.

There is a distinct difference between what is involved in a violation of the appearance of fairness doctrine and what is involved in rendering a decision which is arbitrary and capricious. We have recognized that distinction in a number of cases. *Narrowsview Preservation Ass'n v. Tacoma*, 84

Wn.2d 416, 526 P.2d 897 (1974); *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972).

The only matter presented to this court dealt with the incident at the airport. There was no contention, apart from that single alleged irregularity, that the action of the arbitrators was arbitrary and capricious. While we do not want to be understood as approving the incident at the airport, that incident does not render the decision of the arbitrators arbitrary and capricious. Except the decision be arbitrary and capricious, the statute does not authorize its being set aside. We, therefore, reverse the trial court and affirm the decision of the arbitrators.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.