[No. 44105.    En Banc.    December 9, 1976.]

CHICAGO, MILWAUKEE, ST. PAUL, AND PACIFIC RAILROAD
COMPANY, *Respondent*, v. WASHINGTON STATE
HUMAN RIGHTS COMMISSION, *Appellant*.

*Slade Gorton, Attorney General,* and *Winslow Whitman, Assistant,* for appellant.

*James E. Nelson, J. Fred Simpson, Dennis G. Opacki,* and *David H. Boyd,* for respondent.

*Harold H. Green* on behalf of National Federation of the Blind, amicus curiae.

HUNTER, J.—In June 1973, Robert G. Clark applied for the job of railroad brakeman with the respondent, Chicago, Milwaukee, St. Paul, and Pacific Railroad Company (Railroad). The application process included a medical report covering Clark's physical history and the results of a physical examination. During his physical examination, Clark informed the examining physician of two previous knee surgeries, a medial meniscectomy in each knee, one performed in 1962 and the other in 1967. These two knee surgeries were included in the report, which was sent to the Railroad's chief surgeon. Based on this medical report, the Railroad's chief surgeon recommended that Clark's employment application not be approved. On July 26, 1973, Clark received a letter from the Railroad informing him that his application had been rejected.

On or about September 18, 1973, Clark filed with the appellant, Washington State Human Rights Commission, a notarized complaint, charging the Railroad with discrimination based on a possible physical handicap. Upon investigation by a member of the Commission's staff, the Commission found that there was reasonable cause to believe that an unfair practice had occurred. Following the failure to resolve the dispute through conciliation, the Commission filed an amended complaint on May 14, 1974. The amended complaint contained an affidavit in which a Commission compliance supervisor stated his belief that the complaint had merit.

On May 22, 1974, the chairman of the Commission appointed a hearing tribunal. The Railroad challenged one

member of the panel, Sue Ammeter, on two grounds, competency because of her blindness and bias because of her occupation at the time as an investigator for Seattle's Office of Women's Rights. The chairman of the Commission rejected the challenge on both grounds. The evidentiary hearing before the tribunal took place on July 8 and 9, 1974. The tribunal entered its findings, conclusions, and order on November 7, 1974, although they were not filed with the clerk of the Commission until December 9, 1974. In general, the tribunal agreed with the allegations in the amended complaint. It found that in refusing to hire Clark, the Railroad had discriminated against him on the basis of a physical handicap and had therefore committed an unfair practice within the meaning of RCW 49.60.180(1). The tribunal ordered various relief including an award for lost wages, and ordered the Railroad, among other things, to offer Clark employment as a brakeman.

The Railroad appealed the tribunal decision to the Superior Court for review. In addition to the record of the administrative proceedings, the Superior Court received evidence concerning the selection and composition of the hearing tribunal. Among other findings and conclusions in its judgment, the Superior Court reversed the findings of the tribunal and declared RCW 49.60 "void for lack of a definition of the term 'handicapped'." It is from this judgment that the Commission appeals. In addition, the respondent Railroad cross-appeals on two issues, one related to the selection of the tribunal and the other related to the fairness of the proceedings. For the reasons discussed below, we reverse the trial court's conclusion that the statute is unconstitutionally vague and vacate the remainder of the Superior Court judgment.

The law against discrimination, RCW 49.60, defines and provides remedies for various "unfair practices" related to discrimination. The statutory section at issue in the present case, RCW 49.60.180, provides:

It is an unfair practice for any employer:
(1) To refuse to hire any person because of such per-

son's age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap . . .

The appellant Commission contends that RCW 49.60.180 (1) is not unconstitutionally vague and indefinite even though the statute does not contain a definition of the word "handicap." We agree because the statute provides fair notice of what is required.

The test in Washington for vagueness is the "common intelligence" test enunciated in *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 273, 501 P.2d 290 (1972). *Sonitrol Northwest, Inc. v. Seattle*, 84 Wn.2d 588, 594, 528 P.2d 474 (1974). The terms of a statute are sufficiently defined where men of common intelligence need not guess at their meaning. The vagueness test does not require a statute to meet impossible standards of specificity. *Blondheim v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). If, based on common practice and understanding and in the context of well-defined usage, a statute provides fair notice of what it requires, then it will not be subject to a procedural due process challenge on grounds of vagueness. *See Blondheim v. State, supra; State v. Dixon*, 78 Wn.2d 796, 805-06, 479 P.2d 931 (1971).

Men of common intelligence need not guess at the meaning of "handicap" because it has a well defined usage measured by common practice and understanding. "Handicap" commonly connotes a condition that prevents normal functioning in some way. A person with a handicap does not enjoy, in some manner, the full and normal use of his sensory, mental, or physical faculties. A "handicap" is: ". . . a disadvantage that makes achievement unusually difficult; *esp:* a physical disability that limits the capacity to work." *Webster's Third New International Dictionary* (1961). *See State v. Turner*, 3 Ohio App. 2d 5, 209 N.E.2d 475 (1965); *Chicago, M., St. P. & P. R.R. v. Department of Indus., Labor & Human Relations*, 62 Wis. 2d 392, 215, N.W.2d 443 (1974). It is obvious that "handicap" has a well understood, common meaning. Men of ordinary in-

telligence undoubtedly can understand what constitutes a "handicap" within the context of RCW 49.60.180(1), and, consequently, the statute is not void for vagueness. *Cf. Spokane v. Vaux*, 83 Wn.2d 126, 129-30, 516 P.2d 209 (1973).

The next issues we consider are raised by the Railroad on cross-appeal. The Railroad first contends that the proceedings before the hearing lacked the "appearance of fairness" due to a certain potential conflict of interest as to one of the tribunal members. Its second contention is that the method used by the Commission to select the hearing tribunal was defective. We agree with the Railroad on both points.

An impermissible conflict of interest existed in the present case because one of the tribunal members, Susan Ammeter, had a job application pending with the Commission during the time period the tribunal was processing and deciding this case. Ms. Ammeter took a Field Representative II examination on April 4, 1974. Her accompanying application for employment with the Commission was thus on file with the State Personnel Board several weeks before the Commission chairman appointed the hearing tribunal in this case on May 22, 1974. At the time the tribunal was appointed, the clerk of the Commission was aware of Ms. Ammeter's pending job application and her status as a nonhired applicant. On December 5, 1974, Ms. Ammeter was asked if she was still interested in a job with the Commission and was offered a job. The tribunal's conclusions had been signed by all tribunal members as of November 7, 1974, and they were finally filed with the clerk of the Commission on December 9, 1974. On January 2, 1975, Ms. Ammeter began working for the Commission as a complaint investigator. The Railroad was not aware of these facts until after the hearing when it took Ms. Ammeter's deposition.

The hearing tribunal in this case was appointed by the Commission to evaluate the evidence and determine whether the facts constituted impermissible discrimination in violation of RCW 49.60.180(1). The tribunal functioned

not only as a trier of fact but also as the ultimate decision maker, not unlike a judge in a nonjury trial. *See* RCW 49.60.250. It was required to set out its final decision in an order, accompanied by findings of fact, conclusions of law, and an opinion explaining its reasoning. WAC 162-08-301. There can be no doubt that the hearing tribunal, including Ms. Ammeter, was performing an adjudicatory, rather than a legislative or policy-making function when it found that the Railroad had violated RCW 49.60.180(1). *See Francisco v. Board of Directors,* 85 Wn.2d 575, 579-82, 537 P.2d 789 (1975).

Since the hearing tribunal was, at the least, performing in a quasi-judicial capacity, there is no reason that the same common-law rules of disqualification applicable to judges should not apply. *See Board of Educ. v. Operating Eng'rs Local 68,* 109 N.J. Super. 116, 119, 262 A.2d 426 (1970). The Illinois Supreme Court recognized this fundamental concept in *In re Heirich,* 10 Ill. 2d 357, 384, 140 N.E.2d 825, 67 A.L.R.2d 827 (1956), when it stated that the classical principle, that no person having a conflict of interest may judge a case,

> is as applicable to administrative agents, commissioners, referees, masters in chancery, or other arbiters of questions of law or fact not holding judicial office as it is to those who are technically judges in the full sense of the word.

The extension to such administrative tribunals of the disqualification rules applicable to judges is a well established concept. *State ex rel. Miller v. Aldridge,* 212 Ala. 660, 103 So. 835, 836, 39 A.L.R. 1470 (1925); *See* 1 Am. Jur. 2d *Administrative Law* § 63 (1962).

It is fundamental to our system of justice that judges be fair and unbiased. *See, e.g., Bach v. Sarich,* 74 Wn.2d 575, 582, 445 P.2d 648 (1968); *In re Borchert,* 57 Wn.2d 719, 722-23, 359 P.2d 789 (1961); *State ex rel. McFerran v. Justice Court,* 32 Wn.2d 544, 549-50, 202 P.2d 927 (1949). An interest that is alleged to create bias or unfairness need not be direct or obvious. "Any interest, the probable and

natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit, is sufficient to disqualify. . . . Pecuniary interest in the result of the suit is not the only disqualifying interest." *Ex parte Cornwell,* 144 Ala. 497, 498-99, 39 So. 354 (1905). *Accord, Ex parte White,* 53 Ala. App. 377, 385-86, 300 So. 2d 420 (1974); *see Payne v. State,* 48 Ala. App. 401, 408, 265 So. 2d 185 (1972); *Township Comm. v. Morales,* 119 N.J. Super. 29, 33-34, 289 A.2d 563 (1972); *Board of Educ. v. Operating Eng'rs Local 68, supra* at 120. These principles were long ago recognized by this court in *State ex rel. Barnard v. Board of Educ.,* 19 Wash. 8, 17-18, 52 P. 317 (1898), when it stated:

> The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest.

*Accord, State ex rel. Beam v. Fulwiler,* 76 Wn.2d 313, 316-17, 456 P.2d 322 (1969); *State ex rel. McFerran v. Justice Court, supra* at 549.

Our system of jurisprudence also demands that in addition to impartiality, disinterestedness, and fairness on the part of the judge, there must be no question or suspicion as to the integrity and fairness of the system, *i.e.,* "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 99 L. Ed. 11, 75 S. Ct. 11 (1954). This court, in *State ex rel. Barnard v. Board of Educ., supra,* also recognized the importance of appearances in preserving the integrity of our judicial system. The above

quoted portion of that decision concluded with the following observations:

> Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the liberty and the lives of its citizens, and it should see to it that the scales in which the rights of the citizen are weighed should be nicely balanced, for, as was well said by Judge BRONSON in *People v. Suffolk Common Pleas,* 18 Wend. 550:
>
> "Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."

*State ex rel. Barnard v. Board of Educ., supra* at 18. Thus it is apparent that even a mere suspicion of irregularity, or an appearance of bias or prejudice, is to be avoided by the judiciary in the discharge of its duties. *See Board of Educ. v. Operating Eng'rs Local 68, supra; State v. Buntain,* 11 Wn. App. 101, 107, 521 P.2d 752 (1974); *State v. Madry,* 8 Wn. App. 61, 68-70, 504 P.2d 1156 (1972), quoting *Dümmel v. Campbell,* 68 Wn.2d 697, 699, 414 P.2d 1022 (1966); *cf. Paitakis v. City Council,* 126 N.J. Super. 233, 237, 313 A.2d 804 (1974). The Court of Appeals recently summarized this long standing principle rather well in *State v. Madry, supra* at 70:

> The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice. The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.

■ We have applied these same considerations under the "appearance of fairness doctrine" in several cases involving adjudicatory zoning activities. *See, e.g., Byers v. Board of Clallam County Comm'rs,* 84 Wn.2d 796, 802, 529 P.2d 823 (1974); *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972); *See also Smith v. Skagit County,* 75 Wn.2d 715, 739-40, 453 P.2d 832 (1969). This doctrine is consistent with the general principles discussed above and, with

regard to zoning decisions, it "is applicable to show an interest which might have substantially influenced a member of [a planning] commission *even if that interest did not actually affect him.*" (Italics ours.) *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 420, 526 P.2d 897 (1974), citing *Buell v. Bremerton,* 80 Wn.2d 518, 523, 495 P.2d 1358 (1972). Basically, the critical concern in determining whether a proceeding satisfies the appearance of fairness doctrine is how it would appear to a reasonably prudent and disinterested person. *See Swift v. Island County,* 87 Wn.2d 348, 361, 552 P.2d 175 (1976); *State v. Buntain, supra* at 108.

As indicated above, these principles are directly applicable to the kind of adjudicatory proceeding conducted by the hearing tribunal in the present case. Based on the facts surrounding Ms. Ammeter's participation on the tribunal, we do not believe that the appearance of fairness requirements were met.

In this case the Commission performed the initial evaluation of the complaint. It proceeded with the complaint and appointed a hearing tribunal only after a determination that the complaint was meritorious. The complaint was presented to the hearing tribunal by the Commission. During the proceedings before the tribunal, Ms. Ammeter's application for a job with the Commission was pending. The tribunal's decision, finding in favor of the Commission's position, was signed on November 7, 1974. Ms. Ammeter was offered a job with the Commission on December 5, 1974, and the decision was finally filed with the clerk of the Commission on December 9, 1974.

There is no direct evidence that Ms. Ammeter was prejudiced or motivated in favor of the Commission, and we do not even suggest that she performed her duties as a tribunal member in less than an exemplary manner. It is the fact of her pending application for a job with the very Commission appearing before the tribunal as an advocate that strips the proceeding of the appearance of fairness. Moreover, the actual offer of employment, within a

month of the date upon which the tribunal decision was signed and before the decision was finally filed with the Commission, also makes the proceedings appear less than impartial and fair. *See Swift v. Island County,* 87 Wn.2d 348, 552 P.2d 175 (1976); *Fleming v. Tacoma, supra* at 300; *State v. Madry, supra* at 70. Under these facts and circumstances, we cannot say that a reasonably prudent and disinterested observer would conclude that the Railroad obtained a fair, impartial, and neutral hearing in the proceedings before the hearing tribunal. Therefore, the decision of the tribunal is not valid and cannot be sustained.

The Commission argues, however, that the "appearance of fairness doctrine" cannot apply in this case because it is not among the applicable standards of judicial review, which are contained in RCW 34.04.130(6) of the administrative procedures act. They rely on *Local 1296, Firefighters v. Kennewick,* 86 Wn.2d 156, 542 P.2d 1252 (1975), in which we held that the appearance of fairness doctrine did not apply to arbitration proceedings conducted pursuant to RCW 41.56.030-.910. We reached that result on the basis of the legislation establishing those arbitration procedures which specifically provide:

> The decision made by the panel shall be final and binding upon both parties, subject to review by the superior court upon the application of either party *solely* upon the question of whether the decision of the panel was arbitrary or capricious.

*Local 1296, Firefighters v. Kennewick, supra* at 162, quoting RCW 41.56.450. There is no such limitation on judicial review contained in RCW 34.04.130(6). On the contrary, the appearance of fairness doctrine is entirely compatible with the standard of review listed at (c) of RCW 34.04-.130(6), which allows reversal of agency decisions "made upon unlawful procedure." Consequently, the Commission's argument is not persuasive and it is not improper to apply the appearance of fairness doctrine to the proceedings before the hearing tribunal in this case.

The respondent Railroad's second contention on cross-

appeal is that the Commission's procedure in selecting the hearing tribunal is defective. It argues that the policies followed by the Commission in choosing tribunal members constitute "rules" within RCW 34.04.010(2)(b) of the administrative procedures act and that the proceeding was therefore invalid because the policies were not adopted properly. *See* RCW 34.04.020 and .027.

The evidence introduced before the trial court indicated that tribunal members were chosen from a list of people kept by the clerk of the Commission. Only part of this list was in written form; the remainder was maintained informally and was literally kept in the clerk's mind. In addition, the evidence showed that it is the general policy of the Commission to try to have at least one women on the panel as well as a member of the protected class, *e.g.,* a minority in a race discrimination case. One member of the tribunal is required to be an attorney. WAC 162-08-211(2).

█ There appears to be no question that the Commission is an "agency" within the administrative procedures act. *See Riggins v. Housing Authority,* 87 Wn.2d 97, 99-100, 549 P.2d 480 (1976); *Department of Highways v. King County Chapter,* 82 Wn.2d 280, 283, 510 P.2d 216 (1973). RCW 34.04.010(2) of that act defines "rule" as ". . . any agency order, directive or regulation of general applicability . . . (b) which establishes, alters or revokes any procedure, practice or requirement relating to agency hearings . . ." In addition, RCW 34.04.020(1) requires that

> Each agency shall adopt rules governing the formal and informal procedures prescribed or authorized by this chapter and rules of practice before the agency . . .

The general policies and informal procedures used by the Commission in constituting the hearing tribunal in this case fall within the definition of "rule" in RCW 34.04.010 (2)(b). *Cf. Island County Comm. v. Department of Revenue,* 81 Wn.2d 193, 500 P.2d 756 (1972). To the extent the Commission wishes to use such procedures, the administrative procedures act requires their formal adoption pur-

suant to RCW 34.04.025. Since these policies and procedures were not properly adopted, they cannot be given effect and, therefore, the proceedings before the hearing tribunal are invalid for this reason also. *See* RCW 34.04.020 (2); RCW 34.04.027.

Our disposition of the case makes it unnecessary to reach the other issues raised on appeal and we therefore remand this matter to the Commission for further proceedings not inconsistent with this opinion.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

DOLLIVER, J. (concurring)—I concur. Additionally, I would urge the appellant, Washington State Human Rights Commission, to promulgate guidelines interpreting "sensory, mental, or physical handicap" and "proper performance" as found in RCW 49.60.180. The adoption of rules or regulations interpreting this statute would serve a proper and useful function. *See* RCW 34.04. An employer in the position of the respondent railroad and potential complainants are entitled to some guidance in interpreting this law.

HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur with DOLLIVER, J.

Petition for rehearing denied January 13, 1977.