IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY ) LABOR COUNCIL OF WASHINGTON, ) AFL-CIO; GENERAL TEAMSTERS ) UNION LOCAL NO. 174; SALMON ) BAY SAND & GRAVEL, CO.; ) BALLARD TERMINAL RAILROAD; ) BALLARD INTERBAY NORTHEND ) MANUFACTURING & INDUSTRIAL ) CENTER; NORTH SEATTLE ) INDUSTRIAL ASSOCIATION; CSR ) MARINE; and THE SEATTLE ) MARINE BUSINESS COALITION ) (HEREAFTER COLLECTIVELY, THE ) "BALLARD COALITION"), ) )   Appellants/Cross Respondents, ) )     v. ) ) THE CITY OF SEATTLE; THE ) SEATTLE DEPARTMENT OF ) TRANSPORTATION; THE SEATTLE ) HEARING EXAMINER; and THE ) CASCADE BICYCLE CLUB, ) )   Respondents/Cross Appellants. ) | No. 79543-1-I (consolidated with Nos. 79544-9-I, 80208-9-I) UNPUBLISHED OPINION |

BOWMAN, J. — The "Ballard Coalition," consisting of labor, business, and industry groups, has spent more than a decade challenging the city of Seattle's plan to complete a missing link of the Burke-Gilman Trail through the Ballard maritime and industrial district. Here, the coalition appeals a Seattle deputy hearing examiner's decision on the adequacy of the final environmental impact

statement for the project and the trial court's summary judgment dismissal of their "appearance of fairness" claim. Because the deputy hearing examiner failed to disclose that he was seeking appointment by the Seattle City Council to replace the retiring city hearing examiner while he was also considering the adequacy of a council-endorsed project, we reverse the trial court's summary judgment in favor of the city, enter summary judgment for the coalition, and remand for a new hearing.

## FACTS

The Burke-Gilman Trail (BGT) is a regional bicycle and pedestrian trail between Golden Gardens Park in Seattle and the Sammamish River Trail in Bothell. The trail has a 1.4-mile gap through the Ballard neighborhood known as the "Missing Link." Completion of the BGT's Missing Link has been discussed and analyzed since the 1980s. In the early 1990s, the city of Seattle included the segment in its comprehensive plan. In 2001, the Seattle City Council (Council) directed the Seattle Department of Transportation (SDOT) to evaluate alternative routes for the Missing Link. The Council adopted a resolution identifying Shilshole Avenue NW as the preferred route for the trail in 2003. In 2008, SDOT developed a plan to bridge that gap by building the Missing Link through Ballard's maritime and industrial district.

SDOT conducted an environmental review for the State Environmental Policy Act (SEPA)[1] and prepared a draft environmental impact statement (DEIS), which it published in June 2016. The DEIS analyzed a "No Build Alternative"

---

[1] Chapter 43.21C RCW.

2

where the Missing Link remained open and unconstructed, as well as four "Build Alternates" for the route. After public comments and responses to the DEIS, SDOT issued the final environmental impact statement (FEIS) in May 2017.

The FEIS analyzed a No Build Alternative and five Build Alternatives, including a "Preferred Alternative" developed by SDOT after considering public input on the DEIS. The Preferred Alternative route would begin at the existing western trailhead at the Hiram M. Chittenden (Ballard) Locks, continue east until it turned into NW Market Street, then south on 24th Avenue NW before turning onto Shilshole Avenue NW. The FEIS analyzed the operational impacts to geology, fish and wildlife, land and shoreline use, recreation, transportation, parking, and air quality for all alternatives. It also examined potential traffic hazards.

In June 2017, the Martin Luther King Jr. County Labor Council of Washington, AFL-CIO; General Teamsters Union Local No. 174; Salmon Bay Sand and Gravel Company; Ballard Terminal Railroad; Ballard Interbay Northend Manufacturing and Industrial Center; North Seattle Industrial Association; CSR Marine; and the Seattle Marine Business Coalition (collectively the Coalition) challenged the adequacy of the FEIS before a city hearing examiner. The Coalition named the city of Seattle and SDOT as respondents in the proceeding and Cascade Bicycle Club intervened to represent the interests of its members who are affected by the current gap in the BGT and would benefit from completion of the Missing Link (we refer to the three parties collectively as the

City). The Seattle hearing examiner assigned the appeal to Seattle Deputy Hearing Examiner Ryan Vancil.

Meanwhile, in fall 2017, the Council began the process of replacing Seattle's retiring hearing examiner. Deputy Hearing Examiner Vancil applied for the position in October 2017.

Vancil heard the Coalition's challenge to the FEIS in November and December 2017. The hearings consisted of six days of expert testimony addressing the adequacy of the Missing Link FEIS. Vancil issued his findings and decision in favor of the City on January 31, 2018.

In his decision, Vancil determined that the City's methodology for the FEIS's traffic, safety, and parking impact analysis reflected industry standards and was "legally adequate." The Coalition "did not identify any new significantly negative impacts to the environment concerning traffic, safety, or parking . . . that were not disclosed by the FEIS." Vancil also determined that the FEIS adequately addressed the economic impacts of the Missing Link. Accordingly, Vancil concluded that "[o]n review of the entire record, the level of environmental analysis under the FEIS satisfies the rule of reason."

On February 1, 2018, the Seattle Office of the Hearing Examiner announced that the Council selected Vancil as the replacement for the retiring hearing examiner. The Council confirmed Vancil's appointment on February 5, 2018.

The Coalition appealed Vancil's findings and decision to the King County Superior Court (KCSC), challenging the adequacy of the FEIS. It also named the

Seattle hearing examiner as a respondent and alleged that Vancil violated the appearance of fairness doctrine by applying and interviewing for the chief hearing examiner position while presiding over the FEIS challenge. The parties cross moved for summary judgment on the appearance of fairness issue. In July 2018, KCSC dismissed the Coalition's claim on partial summary judgment and later denied its motion for reconsideration.[2]

KCSC reviewed the merits of the Coalition's challenge to the FEIS in December 2018. The court issued an order (December 2018 Order) granting in part and denying in part the Coalition's challenge to the adequacy of the FEIS. The court found the FEIS did not "adequately disclose adverse economic impacts associated with the potential risks from vehicle to bicycle/pedestrian traffic conflicts." KCSC found the FEIS adequate in all other respects, including the potential traffic hazards, safety impacts, and parking impacts of the Missing Link project. The City moved for reconsideration of the court's finding that the FEIS did not adequately evaluate the economic impact of the project. The court denied the motion.

Both sides appealed. The City[3] appealed the trial court's finding that the FEIS's economic impact analysis was inadequate. The Coalition appealed the court's dismissal of their appearance of fairness claim and the trial court's finding

---

[2] The Coalition requested discretionary review in this court. A commissioner denied review, stating that the Coalition could appeal the final order after KCSC considered the merits of the challenge to the adequacy of the FEIS.

[3] Collectively, the city of Seattle, SDOT, Cascade Bicycle Club, and the Seattle hearing examiner.

that the FEIS was adequate in all areas other than the economic impact analysis. This court consolidated the appeals.

While the appeals were pending, SDOT hired consultants to perform another analysis of the economic impacts of vehicle to bicycle and pedestrian conflicts as ordered by KCSC. The consultants concluded that their analysis was "consistent with the previous analyses of the FEIS and supporting documentation." SDOT published this information as an addendum to the FEIS in April 2019.

In May 2019, the Coalition moved to enforce the December 2018 Order in KCSC. It asked the court to stop SDOT from beginning construction of the Missing Link because even with the addendum, the FEIS "remain[ed] inadequate." KCSC considered the motion to enforce "as a Motion to Clarify," which it granted. The court ordered SDOT "to issue an adequate, complete FEIS . . . adopting or incorporating whatever information it believes will fix the problem identified by [the December 2018 Order]." The court also prohibited SDOT from conducting "any construction under the FEIS" unless it had "independent utility beyond furthering" the Missing Link project, and "unless and until it issues a[n] FEIS pursuant to SEPA procedures and SMC[4] 25.05.460, subjecting itself to [the] SEPA appeals process."

The City appealed the May 2019 order. We consolidated the matter with the other pending appeals.

---

[4] Seattle Municipal Code.

ANALYSIS

Appearance of Fairness

The Coalition argues the trial court erred in dismissing its appearance of fairness challenge on summary judgment and refusing to grant its cross motion. It claims Deputy Hearing Examiner Vancil violated the appearance of fairness doctrine by applying and interviewing "with his future bosses while he was adjudicating a case involving his prospective employer." We agree that the facts here undermine the appearance of fairness in the hearing process.

We review orders on summary judgment de novo and consider all evidence and reasonable inferences in the light most favorable to the nonmoving party. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). By cross moving for summary judgment, the parties concede there are no material issues of fact. Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014). We determine whether, based on those undisputed material facts, a party is entitled to judgment as a matter of law. Enterprise Leasing, Inc. v. City of Tacoma, 139 Wn.2d 546, 551-52, 988 P.2d 961 (1999).

The appearance of fairness doctrine "aspires to the maintenance of public confidence in the just, disinterested decisions of public agencies." Fleck v. King County, 16 Wn. App. 668, 673, 558 P.2d 254 (1977). "[W]henever the law requires a hearing of any sort as a condition precedent to the power to proceed,

7

it means a fair hearing, a hearing not only fair in substance, but fair in appearance as well." Smith v. Skagit County, 75 Wn.2d 715, 739, 453 P.2d 832 (1969). This principle applies equally to judicial and administrative hearings. Chi., Milwaukee, St. Paul & Pac. R.R. v. Human Rights Comm'n, 87 Wn.2d 802, 807, 557 P.2d 307 (1976).

A party asserting a violation of the appearance of fairness must show evidence of actual or potential bias. Magula v. Dep't of Labor & Indust., 116 Wn. App. 966, 972, 69 P.3d 354 (2003). The critical analysis for the appearance of fairness doctrine is how the proceedings would appear to a reasonably prudent and disinterested person. Chi., Milwaukee, 87 Wn.2d at 810. We presume that public officers properly perform their duties. Magula, 116 Wn. App. at 972.

The Coalition relies on Fleming v. City of Tacoma, 81 Wn.2d 292, 502 P.2d 327 (1972); Chicago, Milwaukee, 87 Wn.2d at 802; and In re Al-Nashiri, 921 F.3d 224 (D.C. Cir. 2019), to argue that a decision-maker who has prospective employment with a stakeholder violates the appearance of fairness doctrine by failing to disclose the potential conflict.

In Fleming, 81 Wn.2d at 293-94, a councilman who first voted against a zoning amendment supported by a land developer later moved to reconsider and changed his vote. The amendment passed. Fleming, 81 Wn.2d at 294. Less than two days later, the land developers who prevailed in the rezoning hired the same councilman as their attorney. Fleming, 81 Wn.2d at 294. The court inferred that the councilman arranged his employment with the land developer before he changed his vote, which amounts to an appearance of unfairness " 'so

strong that . . . those who oppose[d] the zoning and who thought this thing through will never, never believe that somehow this wasn't kind of wired before the final vote was taken.' " Fleming, 81 Wn.2d at 300.

Chicago, Milwaukee, 87 Wn.2d at 803-04, involved a tribunal investigating a discrimination complaint against a railroad company.  An applicant for a railroad brakeman job filed a complaint with the Washington State Human Rights Commission, alleging discrimination based on a possible physical handicap. Chi., Milwaukee, 87 Wn.2d at 803.  The commission argued the issue in a hearing before an appointed tribunal.  Chi., Milwaukee, 87 Wn.2d at 810.  The tribunal ruled for the commission, awarding relief to the job applicant.  Chi., Milwaukee, 87 Wn.2d at 804.  It was later discovered that one of the members of the tribunal had a pending job application with the commission.  Chi., Milwaukee, 87 Wn.2d at 806.  The commission offered the job to the tribunal member after the tribunal ruled in favor of the commission.  While there was "no direct evidence" of bias by the tribunal member, the court concluded the proceedings violated the appearance of fairness because "the fact of her pending application for a job with the very Commission appearing before the tribunal as an advocate . . . strips the proceeding of the appearance of fairness."  Chi., Milwaukee, 87 Wn.2d at 810.

And in Al-Nashiri, 921 F.3d at 226, a military judge presided over a military commission trial against a detainee at the United States Naval Station Guantanamo Bay detention camp at the same time he applied for a position as an immigration judge with the United States Department of Justice (DOJ).  The

DOJ assigned an assistant attorney general (AAG) to help prosecute Al-Nashiri and the AAG "appear[ed] to have been the prosecution team's second-in-command for at least part of the time." Al-Nashiri, 921 F.3d at 236. The United States Office of the Attorney General also consulted on the military commission trial procedures and would have helped defend a conviction on appeal. Al-Nashiri, 921 F.3d at 236. The "Attorney General himself" is also directly involved in selecting and supervising immigration judges. Al-Nashiri, 921 F.3d at 235.

The D.C. Circuit determined that "the Attorney General was a participant in Al-Nashiri's case from start to finish" and that the attorney general's role in the military commission posed a challenge for the judge "to treat the Justice Department with neutral disinterest in his courtroom while communicating significant personal interest in his job application." Al-Nashiri, 921 F.3d at 236. The judge's job application "cast an intolerable cloud of partiality over . . . subsequent judicial conduct." Al-Nashiri, 921 F.3d at 237. Plainly stated, "[J]udges may not adjudicate cases involving their prospective employers" because " 'a judge cannot have a prospective financial relationship with one side yet persuade the other that he can judge fairly in the case.' " Al-Nashiri, 921 F.3d at 235 (quoting Pepsico, Inc. v. McMillen, 764 F.2d 458, 461 (7th Cir. 1985)).

Here, the city of Seattle was a named party in the dispute pending before Vancil, and the Council was an interested stakeholder. The city advocated for approval of the Missing Link project that the Council had championed since the late 1990s. The Council reiterated its commitment to the Missing Link in 2003 when it adopted the resolution identifying Shilshole Avenue NW as the preferred

route for the project. In 2014, it adopted a "Bicycle Master Plan" identifying completion of the BGT as a priority. And the Council reviewed and approved the city of Seattle's 2005 and 2035 comprehensive plans that identify completion of the Missing Link as a priority.

Deputy Hearing Examiner Vancil applied for the position of Seattle hearing examiner while he was presiding over the Coalition's challenge to the adequacy of the Missing Link FEIS. Vancil initiated hearings to consider the issue on November 27, 2017 and recessed the hearing on December 4 to participate in the first round of interviews for the hearing examiner position. The second round of interviews occurred on January 18, 2018 and included two members of the Council. On January 31, Vancil issued his decision in favor of the City, affirming the adequacy of the Missing Link FEIS. The next day, the Seattle Office of the Hearing Examiner announced Vancil's selection by the Council as the new hearing examiner. The Council confirmed Vancil's appointment on February 5. Here, as in Fleming, the time coincidence between Vancil's ruling and his appointment as hearing examiner " 'is devastating.' " Fleming, 81 Wn.2d at 300. While the Coalition presents no evidence that Vancil was actually biased in favor of the City in an effort to improve his chances for appointment as the new hearing examiner, the simultaneous timing of the appointment process and the hearing in which the appointing body was an interested stakeholder "strip[ped] the proceeding of the appearance of fairness." Chi., Milwaukee, 87 Wn.2d at 810.

The City argues the procedure to appoint a hearing examiner under the SMC limits any potential for bias in the hiring process by designating a diverse

hiring committee that does not include members of the Council. Under the SMC, candidates for the hearing examiner position are first interviewed "by a committee composed of the Seattle Human Resources Director, the King County Ombudsman or equivalent King County officer, and a private attorney selected by the Seattle/King County Bar Association." SMC 3.02.110.B.[5] Even so, the hiring committee for Vancil's second interview consisted of at least two councilmembers, one of whom was serving as the Council president. Less than two weeks after his second interview, Vancil announced his ruling in favor of the City. And the whole Council confirmed Vancil's appointment only five days after he issued his findings and decision.[6]

Deputy Hearing Examiner Vancil served as a neutral decision-maker in a matter while simultaneously seeking appointment to a higher position from an interested stakeholder. Because he did not disclose the potential conflict to the parties, the proceedings could appear to be unfair to a reasonably prudent and disinterested person. We reverse the trial court's summary judgment in favor of

---

[5] Under SMC 3.02.110.B, the committee must recommend "no fewer than three persons" for consideration by the Council. Here, the committee recommended only two candidates, including Vancil.

[6] The City also argues that the SMC establishing the Seattle Office of the Hearing Examiner as "separate and independent" from other city departments removes the potential for bias in the hiring process. See SMC 3.02.110.A. While the ordinance may guard against bias after a hearing examiner is appointed, we fail to see how the code insulates the appointment process from potential bias. Indeed, SMC 3.02.110.B states the ultimate "[a]ppointment to the Office of Hearing Examiner shall be made by the City Council."

the City, enter summary judgment for the Coalition, and remand for a new hearing.[7]

Bowman, J

WE CONCUR:

Dwyer, J.       Appelwick, J.

---

[7] Because we reverse and remand for a new hearing, we do not address the remaining issues on appeal; specifically, the adequacy of the FEIS. But we note that as of November 17, 2019, while the Seattle SEPA rules still require "non-environmental analysis of economic issues," the adequacy of the analysis "shall not be used in determining whether an [environmental impact statement] meets the requirements of SEPA and is not subject to appeal." SMC 25.05.440.F, .H (Ordinance No. 125964).