[No. 43192-7-I. Division One. September 13, 1999.]
SCOTT A. SWOBODA, *Appellant*, v. THE TOWN OF LA CONNER, *Respondent*.

---

614

*Susan Marie Alexander*; and *Bryan Craig Gourley*, for appellant.

*Stephanie Ellen Croll* and *Michael Charles Walter* of *Keating, Bucklin & McCormack P.S.*; and *Bradford Edward Furlong* of *Law Office of Bradford E. Furlong, P.S.*, for respondent.

WEBSTER, J. — Appellant wishes to demolish or relocate 2 buildings in the Historic Preservation District of La Conner, and to remove 10 trees and relocate 2 others in order to construct a new building. He appeals the denial of these permit applications under the Land Use Petition Act. We affirm.

## FACTS

Appellant Scott Swoboda owns property in the Historic Preservation District of La Conner. The property is zoned commercial, and Swoboda seeks to build a retail, commercial building on it. To this end, he submitted three applications to respondent Town of La Conner in November 1996: (1) an application for a certificate of authorization for the demolition or removal of two existing structures,[1] (2) an application for a certificate of authorization for a building permit for the new construction of a two-story, 25,300 square foot commercial building, and (3) an application for a certificate of authorization for a tree removal permit to remove 10 trees and relocate 2 others.

---

[1]At the hearings before the Planning Commission and the Hearing Examiner, testimony was presented that one of these structures is a house that is over 100 years old and was the home of a pioneer family.

On December 3, 1996, the Town's Planning Commission held a hearing with regard to Swoboda's applications. But when it became apparent that the Planning Commission was unclear as to its role in the review process (particularly with respect to its relationship with the Hearing Examiner), the Commission "tabled" consideration of Swoboda's applications pending further guidance from the Town Council.[2]

Such confusion was apparently resolved during the ensuing months.[3] A new hearing before the Planning Commission was held on June 17, 1997, at which time the Planning Commission took comments from the public as well as from Swoboda. The Planning Commission denied all three applications and issued a written decision, together with findings of fact.

Swoboda appealed the decision of the Planning Commission to the Hearing Examiner. The Hearing Examiner held a hearing where he took testimony from both the public and from Swoboda. He denied the appeal, affirming the decision of the Planning Commission, and also entered written findings of fact and conclusions of law. Swoboda then filed an administrative appeal with the trial court under the Land Use Petition Act (LUPA) in November 1997. The trial court affirmed the land use decision.

Swoboda appeals, arguing that (1) certain sections of the La Conner Municipal Code are unconstitutionally vague, (2) the Hearing Examiner did not have jurisdiction to hear the appeal, (3) he was denied procedural due process at two of the hearings, and (4) all three hearings (the Planning Commission hearings and the Hearing Examiner hearing) violated the appearance of fairness doctrine. He also as-

---

[2]The December 1996 hearing evidently took place shortly after implementation of the Town's Hearing Examiner Ordinance.

[3]In the meantime, the Town had issued Swoboda a Determination of Nonsignificance on February 19, 1997.

signs error to several of the Hearing Examiner's findings and conclusions.

## DISCUSSION
### A. Standard of Review

Judicial review of the land use decision at issue here is governed by RCW 36.70C.130:

(1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

(2) In order to grant relief under this chapter, it is not necessary for the court to find that the local jurisdiction engaged in arbitrary and capricious conduct. . . .

■ We stand in the same position as the superior court when reviewing an administrative decision. *Biermann v. City of Spokane*, 90 Wn. App. 816, 821, 960 P.2d 434 (1998), *review denied*, 137 Wn.2d 1004, 972 P.2d 466 (1999). "[W]e

apply the appropriate standard of review directly to the administrative record." *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 200, 940 P.2d 269 (1997).

## B. Void for Vagueness

It is undisputed that Swoboda's property lies within La Conner's Historic Preservation District. Thus, his proposed project was subject to chapter 15.50 of the La Conner Municipal Code (LCMC), which specifically governs "the designation, preservation, rehabilitation, restoration, and *reconstruction* of all Historic Landmarks *and structures within the Historic Preservation District* (HPD) in the town of La Conner." LCMC 15.50.020 (emphasis added). The Planning Commission had denied Swoboda's applications on the bases that (1) the demolition or relocation of the existing structures was inconsistent with the La Conner Municipal Code and the Comprehensive Plan, (2) the size and scale of the proposed new development was not in keeping with the historic character of the streetscape and "small store frontage" character, and (3) Swoboda had not demonstrated that he took reasonable measures to design and locate his proposed improvements to preserve as many existing significant trees as possible.

A reviewing court may grant relief under LUPA if "[t]he land use decision violates the constitutional rights of the party seeking relief." RCW 36.70C.130(1)(f). Swoboda challenges LCMC 15.50.080(2) and LCMC 15.50.120(1) as unconstitutionally vague.[4]

 When a challenged ordinance involves land use regulation, the ordinance is judged as applied, not evalu-

---

[4]Swoboda appears to advance a vagueness challenge with regard to LCMC 15.50.040 as well. However, as explained in the text, vagueness challenges to land use ordinances are judged as applied. LCMC 15.50.040 is not applicable to Swoboda because it provides "[c]riteria for designation of historic landmarks." Swoboda did not submit an application to designate his property as a historic landmark.

For similar reasons, we do not address Swoboda's argument that the ordinance is unconstitutionally vague due to inconsistent results in the past. First, the record has not been developed with regard to these references to past land use applications. And second, his vagueness challenge is to be judged as applied in this case.

ated for facial vagueness. *Association of Rural Residents v. Kitsap County*, 95 Wn. App. 383, 394, 974 P.2d 863 (1999) (citing *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986)). An ordinance must contain ascertainable standards for adjudication in order to limit arbitrary and discretionary enforcement of the law. *Id.* A statute which forbids or requires the doing of an act in terms so vague that individuals of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Burien Bark Supply*, 106 Wn.2d at 871; *Anderson v. City of Issaquah*, 70 Wn. App. 64, 75, 851 P.2d 744 (1993) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).

*1. LCMC 15.50.080(2)*

Swoboda first challenges LCMC 15.50.080(2). The entire section provides:

General requirements.

(1) *Applicants shall conform to the principles of the Secretary of the Interior's Standards for the Treatment of Historic Properties, including guidelines for preservation, rehabilitation, restoration and reconstruction.*

(2) *The design shall respect and preserve the important features and qualities of the La Conner Historic Preservation District as outlined in the Design Evaluation Checklist in LCMC 15.50.170.* The proposal shall relate to, and not diminish any physical or visual aspect of the site, neighborhood, and community.

(3) Exception. Cases where reconstruction work is proposed for a building of a distinct style, but which is different from that which was typical of the "historic period". In these cases the appropriate design choice should be to respect the distinct style which is significant in its own right and seek to retain the building's particular architectural character, especially in terms of unique form, scale, proportion, rhythm, modelling and massing.

(4) *In those instances not covered by the criteria outlined in this code, the Secretary of Interior's standards apply.*

LCMC 15.50.080 (emphasis added).

Swoboda focuses on the phrase "[t]he proposal shall relate to, and not diminish any physical or visual aspect of the site, neighborhood, and community," arguing that it is so vague that one must guess at its meaning. However, he overlooks the rest of the section, which expressly adopts the Secretary of Interior's standards for the treatment of historic properties, as codified in LCMC 15.50.070, and which also refers to the Design Evaluation Checklist in LCMC 15.50.170. This design checklist tracks the detailed provisions of LCMC 15.50.090-.160, which provide specific standards for the construction, preservation, rehabilitation, restoration or reconstruction within the Historic Preservation District. The standards deal with the building exterior, building interior, building site, district/neighborhood, health and safety code requirements, energy retrofitting, new additions to historic buildings, and accessory structures. *See* LCMC 15.50.090-.160.

Thus, we conclude that the Code contains ascertainable standards with which to implement the general provision of LCMC 15.50.080(2). For example, some of these standards, as adopted from the Secretary of Interior, provide as follows:

(1) A property shall be used as it was historically, or be given a new use that maximizes the retention of distinctive materials, features, spaces, and spatial relationships. Where a treatment and use have not been identified, a property shall be protected and, if necessary, stabilized until additional work may be undertaken.

(2) The historic character of a property shall be retained and preserved. The replacement of intact or repairable historic materials or alteration of features, spaces, and spational relationships that characterize a property shall be avoided.

(3) Each property shall be recognized as a physical record of its time, place, and use. Work needed to stabilize, consolidate, and conserve existing historic materials and features shall be physically and visually compatible, identifiable upon close inspection, and properly documented for future research.

(9) Each property shall be recognized as a physical record of its time, place, and use. Changes that create a false sense of historical development, such as adding conjectural features or elements from other historic properties, shall not be undertaken.

(11) New additions, exterior alterations, or related new construction shall not destroy historic materials, features, and spatial relationships that characterize the property. The new work shall be differentiated from the old and shall be compatible with the historic materials, features, size, scale and proportion, and massing to protect the integrity of the property and its environment.

(12) New additions and adjacent or related new construction shall be undertaken in such a manner that, if removed in the future, the essential form and integrity of the historic property and its environment would be unimpaired.

(19) Designs that were never executed historically shall not be constructed.

LCMC 15.50.070.

Swoboda contends that these standards do not apply to his structures because they apply only to designated historic landmarks. We disagree. LCMC 15.50.020 plainly states that the provisions of chapter 15.50 of the Code apply to "the designation, preservation, rehabilitation, restoration, and reconstruction of all Historic Landmarks *and structures within the Historic Preservation District* (HPD) in the town of La Conner." (emphasis added). Nowhere does the Code state that the Secretary of Interior's standards apply only to designated historic landmarks.

Furthermore, LCMC 15.50.080(1) provides that "[a]pplicants shall conform to the principles of the Secretary of the Interior's Standards for the Treatment of Historic Properties." This mandate falls under the specific heading: "Article II. Criteria for Design Review of New Construction, Preservation, Rehabilitation, Restoration or Reconstruction *Within* the Historic Preservation District." (emphasis added). And in fact, LCMC 15.50.070 states that "[t]he Secretary of Interior's standards for four distinct,

but inter-related approaches to the treatment of historic properties *shall be followed for buildings in the Historic Preservation District* as outlined below . . . ." (emphasis added). The Code simply does not limit application of these standards to "historic landmarks." Swoboda's argument to the contrary is without merit.

Thus, we conclude that the Code provides detailed and technical standards under the Secretary of Interior's standards of LCMC 15.50.070, as well as under the design review criteria delineated in LCMC 15.50.090-.160. LCMC 15.50.080(2) is not unconstitutionally vague as applied.

*2. LCMC 15.50.120(1)*

Swoboda takes issue with one of these standards, LCMC 15.50.120(1), contending that the standard itself is unconstitutionally vague. The entire section provides:

District/neighborhood.

(1) *Buildings, streetscape, and landscape features should be identified, retained, preserved, protected and maintained.* Features can include streets, alleys, paving, walkways, street lights, signs, benches, parks and gardens, and trees.

(2) Building setbacks on Morris Street Commercial District shall be as follows:

(a) Minimum front yard—five feet. This minimum may be increased to reduce the impact of new structures on adjoining historic structures.

(b) Minimum side yard—five feet.

(c) Minimum rear yard—none except when adjoining a residential district in which case the setback shall be 10 feet.

(3) *Building alterations or additions for new uses should be compatible with the historic character of the district or neighborhood in terms of size, scale, design, material, color, and texture.*

(4) The size and scale of an addition should be smaller than the original building so that it can be distinguished as a secondary structure. The addition could be recessed to mitigate the impact on the appearance of the original structure.

LCMC 15.50.120 (emphasis added).

Swoboda focuses on the requirement that: "Buildings, streetscape, and landscape features should be identified, retained, preserved, protected and maintained," arguing that these terms are vague. We disagree. First, the reader is provided with several examples of streetscape and landscape features. And second, the terms "identified, retained, preserved, protected, and maintained" do not require individuals of common intelligence to necessarily guess at their meaning.

The dictionary defines "identify" as "[t]o establish the identity of . . . show or prove the sameness of . . ." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1123 (1986). "Retain" is defined as "to hold secure or intact." *Id.* at 1938. Similarly, "preserve" is primarily defined as "to keep safe from injury, harm, or destruction . . . protect, save." *Id.* at 1794. "Protect" is primarily defined as "to cover or shield from that which would injure, destroy, or detrimentally affect: secure or preserve usu[ally] against attack, disintegration, encroachment, or harm." *Id.* at 1822. Last but not least, the primary definition of "maintain" is "to keep in a state of repair, efficiency, or validity: preserve from failure or decline." *Id.* at 1362. These terms are not ones that necessitate guesswork.

Swoboda also argues that "if the Town wanted to restrict new construction in the [Historic Preservation District] to that size, shape, height, width and lot coverage, it has only to enact a code section that says exactly that." Reply Br. at 5. But this is precisely what LCMC 15.50.120(3) mandates: *"Building alterations or additions for new uses should be compatible with the historic character of the district or neighborhood in terms of size, scale, design, material, color, and texture."* (emphasis added). Similarly, LCMC 15.50.090(13), which discusses the criteria for the building exterior, requires that *"[t]he scale of new buildings and additions should be in keeping with other buildings in the district* to preserve the existing streetscape." (emphasis added).

We therefore conclude that LCMC 15.50.120(1) also is not unconstitutionally vague as applied. This is not a case where a lack of uniform guidelines leaves the code's interpretation solely to the discretion of administrative bodies or officials.[5] *See Chicago, Milwaukee, St. Paul, & Pac. R.R. v. Human Rights Comm.*, 87 Wn.2d 802, 805, 557 P.2d 307 (1976) ("The vagueness test does not require a statute to meet impossible standards of specificity.").

## C. Hearing Examiner

 A court reviewing a LUPA appeal may grant relief if the land use decision is outside the authority or jurisdiction of the body or officer making the decision. RCW 36.70C.130(1)(e). Swoboda contends that the Hearing Examiner did not have the authority or jurisdiction to hear his appeal of the Planning Commission's decision. He concedes[6] that on January 28, 1997 (approximately five months before the Planning Commission heard and decided his case, and seven months before the Hearing Examiner held a hearing and affirmed the Planning Commission's decision), the Town Council passed Ordinance No. 691, which expressly provides:

> *Any Planning Commission decision on a Certificate of Authorization may be appealed to the Hearing Examiner, if application for such is made within ten (10) days of the decision and an appropriate appeal fee is paid.*

(Emphasis added.)

Nevertheless, Swoboda appears to argue that Ordinance 691 did not actually vest the Hearing Examiner with the authority to hear Planning Commission appeals because the ordinance had not yet been codified within chapter

[5]Swoboda further argues that "a person of ordinary intelligence cannot determine how structures which are not designated historical landmarks will be treated in the [Historical Preservation District]." Appellant's Opening Br. at 10. However, as discussed, it is clear under the Code that both historic landmarks and structures within the Historic Preservation District are subject to the standards and criteria of chapter 15.50.

[6]Appellant's Opening Br. at 14.

15.12 of the La Conner Municipal Code.[7] He provides no citations of authority for the proposition that an ordinance is not effective until codified. Moreover, Ordinance 691 further provides:

> *The provisions of this ordinance are to take effect immediately* and shall apply to all future applications and to the next decisional step to be made for any application pending before the Town of La Conner; the foregoing notwithstanding, any matter pending before the Town of La Conner for which a hearing has been held before the Planning Commission or Board of Adjustment and for which a decision has not yet been rendered and where such matters would, pursuant to the effect of this Ordinance be heard by the Hearing Examiner; the Planning Commission and/or Board of Adjustment shall retain jurisdiction to complete the pending decision with respect to that matter and/or application only. . . .

(Emphasis added.) In light of Ordinance 691, we conclude that Swoboda's jurisdictional argument is without merit.

### D. Procedural Due Process

Swoboda contends that he was deprived of due process because he was not afforded adequate notice of either the December 3, 1996 Planning Commission hearing or the August 13, 1997 Hearing Examiner hearing. He further argues that he was not afforded the opportunity to be heard at the Hearing Examiner hearing. *See* RCW 36.70C-.130(1)(f) (reviewing court may grant relief under LUPA if "[t]he land use decision violates the constitutional rights of the party seeking relief.").

#### 1. *December 1996 Hearing*

As discussed in the facts, the Planning Commission held a hearing on December 3, 1996 with regard to Swoboda's applications. But because the Planning Commission was unclear as to its role in the review process (due to the

---

[7]That is, Swoboda essentially argues that the new ordinance cannot yet be found in chapter 15.12 (the section governing the Hearing Examiner).

newly-enacted Hearing Examiner ordinance), consideration of Swoboda's applications was "tabled" pending further guidance from the Town Council.

Swoboda argues that he was not adequately apprised of the scope of the initial December 1996 hearing. But the reason for this evidently stems from the fact that, at that time, the Planning Commission itself was unclear as to the scope of the hearing. The record makes clear that this is precisely why the Planning Commission ultimately decided *not* to consider his applications at the December 1996 hearing.[8] Contrary to Swoboda's assertions, his rights were not adjudicated at that hearing. *Cf. Veradale Valley Citizens' Planning Comm. v. Board of County Comm'rs*, 22 Wn. App. 229, 232, 588 P.2d 750 (1978) ("Procedural due process requires that an individual have notice and an opportunity to be heard before he can be deprived of an established property right."). Thus, we reject this argument.

2. *August 1997 Hearing*

■ Swoboda next argues that he received inadequate notice of the August 1997 hearing held by the Hearing Examiner because he was told that the hearing would be a "closed record appeal" rather than an "open record hearing."

However, as the Town indicates, a review of the proceedings shows that Swoboda expressly waived any objections based on lack of notice:

[Hearing Examiner]:

*I call to order now the public hearing* on the appeal involving the proposed Lancaster Building . . . .

. . . .

It is now about 6:02 p.m., August 13, 1997, and we are in Town Hall in LaConner. *Notice of this hearing gave this*

---

[8]The confusion was apparently resolved before the Planning Commission held a new hearing on Swoboda's applications in June 1997. Swoboda does *not* challenge the adequacy of notice for the June 17, 1997 hearing (the hearing from which the Planning Commission made its decision).

*hour and this place and this date for this hearing. So, unless I have objection based on lack of notice, it appears that we are lawfully gathered.*

*[Swoboda] mentioned to me at the start of the proceeding that written notice, mailed notice, did not get to him.* Is that correct?

[Swoboda]:

Yes.

[Hearing Examiner]:

*And I think we need to know whether you wish to oppose this gathering on that grounds.*

[Swoboda]:

*No. I don't.*

[Hearing Examiner]:

All right. *So you're waiving the right to written notice.*

[Swoboda]:

*Yes.*

[Hearing Examiner]:

All right. Got to make that clear. Notice is jurisdictional in my view. We don't have a hearing if you object to notice. *Does anyone else in the room object to this hearing based upon a failure of notice?*

*No one does. . . .*

(Emphasis added.)

We agree with the Town and conclude from this record that Swoboda clearly waived any objections to the proceeding based on inadequate notice.

Swoboda additionally argues in passing that he was deprived of an opportunity to be heard at the August 1997 hearing. We find this argument to be without merit. The Hearing Examiner had Swoboda present his testimony first, followed by argument from his counsel, questioning by the

Hearing Examiner, and testimony by people in support of Swoboda's applications.[9]

Following the Town's presentation of its case,[10] the Hearing Examiner asked Swoboda to present a closing statement, which he did. Although the Hearing Examiner made a few comments indicating that he was mindful of the time, nothing in the record supports Swoboda's contention that he was denied an opportunity to be heard.[11]

## E. Appearance of Fairness Doctrine

▇ Swoboda also challenges the Planning Commission hearings and the Hearing Examiner hearing as violating the common law appearance of fairness doctrine. He appears to primarily argue that the Commissioners and the Hearing Examiner were biased against him because they necessarily accorded too much weight to testimony that was unfavorable to him, while not according enough weight to testimony that was favorable to him.

While the Planning Commission and Hearing Examiner ultimately did not find in his favor, Swoboda has not shown evidence of any actual or potential bias to support his claim. Without such a showing, an appearance of fairness claim cannot succeed and is without merit.[12] *Organization to Preserve Agric. Lands v. Adams County*, 128 Wn.2d 869,

---

[9]In fact, the record indicates that Swoboda's opening testimony and argument by counsel took nearly an hour and a half.

[10]We note that Swoboda's attorney also questioned or cross-examined the people who testified in support of the Town.

[11]For example, the Hearing Examiner stated:

I don't want to be harsh or unfriendly, but it's 9:30 . . . . and that's a long ways from 6:30 and I'm thinking, um, I don't want to shortchange the applicant in his right to be heard and to present everything in full and I'm willing to take a closing statement, if you wish.

In addition, the record shows that throughout the evening, the Hearing Examiner reminded other witnesses, including the Town's witnesses, of the time.

[12]Swoboda also argues that the Planning Commission and Hearing Examiner were biased against him because they provided him inadequate notice of the hearings and denied him an opportunity to be heard. But as shown in Part D above, we find otherwise.

890, 913 P.2d 793 (1996); *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992).

## F. Hearing Examiner's Findings & Conclusions

Finally, Swoboda generally argues that his proposal meets all of the requirements of the La Conner Municipal Code and thus should have been approved. To that end, he challenges the findings and conclusions of the Hearing Examiner. A reviewing court may grant relief under LUPA if the land use decision is an erroneous interpretation of the law, or if the land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court, or if the land use decision is a clearly erroneous application of the law to the facts. RCW 36.70C-.130(1)(b)-(d).

*1. Relocation of Existing Structures (Finding of Fact No. 5)*

Swoboda challenges the Hearing Examiner's finding that he had not yet proposed a site for the relocation of the two existing structures on his property. But nothing in the record shows the actual identification of any relocation sites. The citation provided by Swoboda shows that during the June 1997 hearing, the consultant planner for the Planning Commission stated:

> [Swoboda] has proposed to move the house rather than destroy it. *I understand he has some possibilities lined up as to where to put it, but he's not following through on it until he gets some preliminary decision out of this Board.* Now he has agreed to there being a condition in this. You'll notice there's a condition in here that *prior to any construction or anything like that, there has to be a plan submitted for the relocation of the house and it has to be approved by the City and [Swoboda's] agreed to such a condition on the project.*

(Emphasis added.) Thus, Swoboda apparently agreed to submit a relocation plan for approval. However, he fails to point to any such plan, and a review of the record reveals none. In light of the record before this court, we conclude that the Hearing Examiner did not err in making this finding.

## 2. *Swoboda's Experience (Finding of Fact No. 7)*

Swoboda also challenges a statement made by the Hearing Examiner in Finding of Fact No. 7. The entire finding is as follows:

> Appellant Swoboda testifies that he has restored many historic buildings. He states that he has restored at least 15 buildings and has done that work all his life. *With such experience, appellant Swoboda would have known or had reason to know that the Planning Commission retained jurisdiction for historic design review after implementation of the Hearing Examiner system.* Given his lifetime experience, he also would have understood that the Town's Comprehensive Plan and [Uniform Development Code] were substantially revised in 1995 pursuant to the mandate and requirements of the State's Growth Management Act. Together, the GMA, Comprehensive Plan and [Uniform Development Code] have established added protection for structures within the Historic Preservation District and a more restrictive regulatory framework for development in the Historic Preservation District.

(Emphasis added.)

Swoboda challenges the finding that based on his experience, he should have known that the Planning Commission would conduct a historic design review of his applications. Indeed, Swoboda had testified at great length as to his experience restoring historic structures. For example, at the June 1997 hearing, he stated:

> But I have probably—I can say this with all certainty, have restored more historic structures tha[n] all the people in this communi—in this room combined. I . . . am in the process of restoring an entire city block in Everett right now that was built in 1896. And . . . I restored the oldest church in Snohomish County. I restored the Oxford Saloon. I restored countless homes. *I was involved in the writing of the . . . historic district for Snohomish.* . . . I've chose[n] to be involved with historic . . . preservation all my life. . . .

(Emphasis added.) He also referred to the Growth Management Act in discussing his proposed two-story building:

"[M]ost of the buildings . . . have [second] stories. . . . [A]nd it's to increase the square footage, the usage of the building, without increasing the impact . . . and that's basically what the Growth Management . . . Act, really wanted to do was try to get more space put into a smaller area . . . ."

We conclude that there is substantial evidence in the record to support a finding that based on his background and experience, Swoboda had reason to know that the Planning Commission would conduct a historic design review of his proposed project.

*3. Demolition and Past Practices (Conclusions of Law No. 2 and No. 4)*

Swoboda contends that the Hearing Examiner erroneously concluded that the La Conner Municipal Code does not allow for the demolition of a structure in the Historic Preservation District. In effect, he suggests that such was the basis for the Examiner's decision.

However, Swoboda has taken the Hearing Examiner's conclusion out of context. Conclusion of Law No. 2 addresses Swoboda's *vagueness* challenge. In so doing, the Hearing Examiner discussed the standards and criteria outlined in the Code, and merely noted the fact that "demolition" is not set forth as one of the approaches for the treatment of historic properties:

It is concluded that the Historic Preservation District section of the [UNIFORM DEVELOPMENT CODE § 3.8] is not unenforceably vague. . . . The criteria for historic districts at subsection "E" defines in terms understandable to the layman what an historic district is to contain. The criteria for design review "H" proceeds through several pages of structural and architectural detail to describe elements to be examined in design review. *Further, the standards for treatment of historic properties . . . describe the United State[s] Secretary of Interior's standards for four distinct but interrelated approaches to the treatment of historic properties. Those four are preservation, rehabilitation, restoration, and reconstruction. The list does not include demolition.* The argument that the

historic preservation language of the [UNIFORM DEVELOPMENT CODE] is vague falls . . . .

(Emphasis added.) Thus, as the Town argues, Conclusion of Law No. 2 is actually a legal conclusion pertaining to Swoboda's vagueness argument—not a legal conclusion regarding whether or not his applications were rightfully denied under the terms of the Code. As discussed in Part B above, the Hearing Examiner did not err by rejecting Swoboda's vagueness challenge.

Swoboda also assigns error to Conclusion of Law No. 4, which dismisses his argument that the Town has been inconsistent with its land use decisions in the past. But again, this issue is part of Swoboda's vagueness argument, which has already been addressed.[13] We therefore reject Swoboda's challenges to Conclusions of Law No. 2 and No. 4.

*4. Selling Furniture (Conclusion of Law No. 3)*

Swoboda next argues that the Hearing Examiner concluded that he was prohibited from selling furniture in the historic district under the Code, suggesting that such was the basis for the decision. We disagree with Swoboda's interpretation of this conclusion of law. Conclusion of Law No. 3 states:

> It is concluded that a use permitted in a commercial zoning district may be limited if that commercial district has an historic district overlay zone upon it. The applicant's repeated argument in this record that the furniture store is a permitted use in the underlying Commercial zoning ignores the function of the historic district overlay upon that zone.

That is, the Hearing Examiner acknowledged Swoboda's concern that a furniture store is a permitted use for the property *as zoned*, but simply explained that the zoning code is not the only code at play with regard to Swoboda's property because it is located within the Historic Preservation District. Thus, contrary to Swoboda's arguments, the

---

[13]In other words, Swoboda argues that the Town's inconsistent past land use decisions necessarily demonstrate that the Code is unconstitutionally vague.

Hearing Examiner did not conclude that he was prohibited from selling furniture in the historic district. We therefore reject his challenge to Conclusion of Law No. 3.

*5. Historic Sites/Historic Landmarks (Conclusion of Law No. 5)*

Swoboda contends that the Hearing Examiner erred by concluding that "historic sites" are protected, in addition to "historic landmarks." He again argues that the Code applies only to "historic landmarks," and does not govern the treatment of "historic sites."

But one of the purposes of chapter 15.50 of the La Conner Municipal Code is to "[p]rovide for the identification and protection of structures *and sites* within the town that reflect special elements of the town's architectural, artistic, aesthetic, historical, economic, and social heritage." LCMC 15.50.010(1) (emphasis added). In fact, one of the criteria for establishing a Historic Preservation District in La Conner is that "[t]he area includes a significant concentration of linkage *of sites*, buildings, structures, or objects which are unified visually by style, plan, or physical development distinguished by association with historic periods, events, people, or cultural trends . . . ." LCMC 15.50.050(2) (emphasis added).

Additionally, as previously discussed, LCMC 15.50.020 makes clear that chapter 15.50 is to apply not only to "historic landmarks," but also to "structures within the Historic Preservation District." In turn, "historic district" is defined as "the area established as the Historic Preservation District . . . *which has a concentration of sites or structures of historic significance* to the town." LCMC 15.10.515 (emphasis added). The Hearing Examiner did not err by concluding that both "historic sites" and "historic landmarks" are protected under the Code.

*6. Historic Design Review (Conclusion of Law No. 6)*

Swoboda next contends that the Hearing Examiner erroneously stated that the Planning Commission conducted a "historic design review" of his proposed project. He argues that "the Planning Commission was not conducting a

'historic design review;' rather, it was hearing an application for two certificates of authorization and a permit for tree removal." Appellant's Opening Br. at 28.

But Swoboda does not appear to contend that the wrong decisional body reviewed his designs and plans. In fact, the Planning Department Staff submitted a comprehensive report to the Planning Commission on his proposed project, providing a detailed, step-by-step analysis of whether the project conformed with the Historic Preservation District Design Criteria. The report makes clear that it was only a *recommendation* to the Planning Commission, and that it was submitted for the Commission's review. The Commission's findings and decision confirms that it had reviewed this staff report in making its determination. Moreover, Swoboda does not seem to dispute that an application for a certificate of authorization within the Historic Preservation District is subject to "historic design review."

To the extent Swoboda suggests that the Planning Commission did not conduct a historic design review of his project, or did not have the authority to conduct such a review, we find this argument to be without merit.

7. *Tree Removal (Conclusion of Law No. 7)*

Finally, Swoboda challenges the Hearing Examiner's conclusion that he had not met the requirements of the tree ordinance. The tree ordinance provides as follows:

> (1) Authorization shall be granted to remove a tree only if the applicant has taken reasonable measures to design and locate the proposed improvements to preserve as many existing significant trees[14] as possible.
>
> (2) Authorization to remove a significant tree may be granted if the applicant can demonstrate one or more of the following conditions:
>
> (a) A permissible use of the site cannot reasonably be undertaken unless specific trees are removed or relocated.

---

[14]"A 'significant tree' is defined as an evergreen or deciduous tree at least six inches in diameter at a point five feet above ground level." LCMC 15.60.010.

(b) The tree is located in such proximity to an existing or proposed structure that the safety, utility or structural integrity of the structure is materially impaired.

(c) The tree materially interferes with the location, servicing or functioning of existing utility lines or services.

(d) The tree creates a substantial hazard to motor, bicycle or pedestrian traffic . . . .

(e) The tree is diseased or weakened by age, abuse, storm or fire and is likely to cause injury or damage to people, buildings or other improvements.

LCMC 15.60.030.

Both the Hearing Examiner and the Town read subsection (1) to constitute a threshold requirement before any tree removal permit is granted—and hence, before any consideration of the criteria under subsection (2). That is, the Town interprets subsection (1) to provide that no tree removal permit is to be granted unless reasonable measures have been taken to preserve as many existing significant trees as possible.

Swoboda does not appear to dispute this interpretation and does not respond to this argument, except to predict that it will lead to absurd results. Instead, he merely argues that the permit should have been granted because he had demonstrated three of the five criteria under subsection (2) (that he needed to remove the trees for his project; that the trees compromised the safety, utility, or structural integrity of the structure; and that one of the trees was in a weakened state). But as the Town indicates, nothing in the record shows that Swoboda attempted to meet the requirement of subsection (1)—there is no evidence that Swoboda had taken reasonable measures to design the proposed project to preserve as many existing significant trees as possible. As such, we conclude that the Hearing Examiner did

not err by finding that Swoboda had failed to comply with the tree ordinance.[15]

We affirm.

BECKER and Cox, JJ., concur.

Reconsideration denied October 20, 1999.

---

[15]Moreover, a decision under subsection (2) is discretionary only, as it states that authorization to remove a significant tree "may" be granted. Thus, an application may be denied even if it meets the criteria of subsection (2). In any event, Swoboda's tree removal application appears to become a moot point in light of this opinion.