69 P.3d 354 (2003)
116 Wash.App. 966
Pat MAGULA d/b/a Magula Construction, Appellant,
v.
The DEPARTMENT OF LABOR AND INDUSTRIES, OF the STATE OF WASHINGTON; The Electrical Board, for the State of Washington, Respondents.
No. 21404-4-III.
Court of Appeals of Washington, Division 3, Panel Nine.
May 22, 2003.
*355 George Fearing, Attorney at Law, Kennewick, WA, for Appellant.
Lisa Marsh, Shelley M. Mortinson, Assistant Attorneys General, Olympia, WA, for Respondents.
Richard H. Robblee, Rinehart & Robblee, Seattle, WA, Amicus Curiae.

OPINION PUBLISHED IN PART
SWEENEY, J.
The question here is whether polyvinyl chloride (PVC) conduitwhen used to carry electrical wiresis "electrical equipment" which must by statute (former RCW 19.28.120(1) (1992)[1]) be installed by a licensed electrical contractor. The trial judge accepted the agency's conclusion that this is electrical equipment. Giving the deference traditionally afforded the agency charged with implementing the statute, we affirm the decision of the trial judge.

FACTS
Pat Magula is a licensed general contractor. And in that capacity, he routinely installs PVC conduit for the utility company. The conduit houses and protects electric wires.
Generally, his process is this. An electrical contractor wires the house. An electrician brings conduit in the house to the ground and straps it to the house. The general contractor tells the utility company that the house is ready for service. The utility company then specifies conduit and the depth of a trench from its transformer to the house. The contractor digs a trench from the house to the utility's transformer and lays the PVC pipe in the trench. The PVC pipe is then connected to a meter on the house. The utility company inspects it. The contractor backfills the trench. And the utility company later connects the conduit to the transformer and pulls the wires from the house to the transformer.
Here, Mr. Magula laid down three-inch rigid, nonmetallic PVC conduit for electrical wiring in the course of building a single family house. An electrical inspector with the Department of Labor and Industries cited him for performing electrical work without a license. Mr. Magula appealed the citation.
An administrative law judge concluded that the conduit was electrical "equipment," see former RCW 19.28.005(8) (1993), and therefore had to be installed by an electrical contractor (former RCW 19.28.120(1)). Mr. Magula appealed to the state electrical board. The electrical board affirmed the administrative law judge's decision. Mr. Magula next petitioned for judicial review of that decision. A superior court judge concluded that the board's interpretation of former RCW 19.28.060 (1993) should be given deference and affirmed the board's ruling.

DISCUSSION
STANDARD OF REVIEW
We review an agency's legal conclusions de novo. RCW 34.05.570(3)(c), (d); City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998).
BURDEN OF PROOF
Mr. Magula must establish the invalidity of the board's order. RCW 34.05.570(1)(a), (d); *356 Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 77, 11 P.3d 726 (2000).
STATUTORY CONSTRUCTION
Agency Deference. We defer to the agency's interpretation if the statute is ambiguous. Postema, 142 Wash.2d at 77, 11 P.3d 726. "`A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable.'" Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239-40, 59 P.3d 655 (2002) (quoting State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001), cert. denied, 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002)).
Canons of Construction. We try to view the statute at issue here in the context of related statutes or other provisions of the same act to arrive at its meaning. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 10-12, 43 P.3d 4 (2002). We still derive the plain meaning from the words of the statute. But we derive their meaning by placing those words in the broader statutory scheme. Id. at 11-12, 43 P.3d 4.
Statutes at Issue.
A general electrical contractor license shall grant to the holder the right to engage in, conduct, or carry on the business of installing or maintaining wires or equipment to carry electric current, and installing or maintaining equipment, or installing or maintaining material to fasten or insulate such wires or equipment to be operated by electric current, in the state of Washington.
Former RCW 19.28.120(1)(h). "`Equipment' means any equipment or apparatus that directly uses, conducts, or is operated by electricity but does not mean plug-in household appliances." Former RCW 19.28.005(8) (emphasis added).
Mr. Magula argues that the words "conduct" and "convey" in this context mean capable of being charged with electricity. And the PVC conduit here is incapable of an electrical charge. The administrative law judge relied on the dictionary definition of "conduct""to show the way to; lead; guide; to be or mark the way." Electrical Board Record (BR) at 57 (citing WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE (2d college ed.1972)). With that definition in hand, the administrative law judge then concluded that "[c]learly, the conduit Appellant was installing was for the specific purpose of guiding or leading the electrical wire that was to be installed inside the conduit at a later time." BR at 57.
Related Regulations. The Department of Labor and Industries' regulations are also helpful. The department's safety standards for electrical construction work defines "equipment" as "[a] general term including material, fittings, devices, appliances, fixtures, apparatus, and the like, used as part of, or in connection with, an electrical installation." WAC 296-155-462(37). The Dictionary of Occupational Titles says that an electrician in the construction industry "[m]easures, cuts, bends, threads, assembles, and installs electrical conduit, using tools, such as hacksaw, pipe threader, and conduit bender. Pulls wiring through conduit...." UNITED STATES DEP'T OF LABOR DICTIONARY OF OCCUPATIONAL TITLES 824.261-010 (4th ed. rev.1991). See WAC 296-127-013(2)(c) (naming the Dictionary of Occupational Titles as an authoritative source for scope of work descriptions to determine prevailing wage rates).
So if we consider Mr. Magula's argument that installation of this conduit is not "electrical construction," the meaning of the word "conducts" is susceptible of two different meanings. It is then ambiguous. Mr. Magula advances one meaning, the department another.
AGENCY DEFERENCE
For us then, this is one of those cases in which the decision is best left to the agency responsible for enforcing the law. Hatley v. City of Union Gap, 106 Wash.App. 302, 307, 24 P.3d 444 (2001).
The fundamental objective here is safety safety for the electrical workers, and safety for the public who uses the electricity.[2] And *357 the agency is best suited to decidetechnically those aspects of electrical construction which will ultimately enhance safety. The department has, with strong support from electrical workers, concluded that electrical conduit and the construction of electrical conduit is one of those tasks of electrical construction which is necessarily within the definition of equipment. Resp't's Br. at 14-15; Br. of Amicus Curiae Wash. State Ass'n of Elec. Workers at 1, 4-5.
PROPRIETY OF THE PROCEEDINGS
Mr. Magula next argues that the proceedings violated the appearance of fairness doctrine. This is because six of the board members were either licensed electrical contractors or certified electricians.[3]
The appearance of fairness doctrine applies to administrative tribunals acting in a quasi-judicial capacity. City of Hoquiam v. Pub. Employment Relations Comm'n, 97 Wash.2d 481, 488, 646 P.2d 129 (1982). "[T]he presumption is that `public officers will properly and legally perform their duties until the contrary is shown.'" Id. at 489, 646 P.2d 129 (quoting Rosso v. State Pers. Bd., 68 Wash.2d 16, 20, 411 P.2d 138 (1966)).
A party asserting an appearance of fairness claim must show evidence of actual or potential bias to support that claim. Swoboda v. Town of La Conner, 97 Wash.App. 613, 628, 987 P.2d 103 (1999). The party must produce sufficient evidence demonstrating bias, e.g., personal or pecuniary interest on the part of the decision maker; mere speculation is not enough. In re Pers. Restraint of Haynes, 100 Wash.App. 366, 377 n. 23, 996 P.2d 637 (2000).
Mr. Magula notes that of the 13 voting board members, three members are licensed electrical contractors (one of which may be an electrical industry trade representative) and three members are certified electricians. The remaining members include: one person from a public or private power utility; one person from a facilities-based telecommunications service; one licensed telecommunications contractor; one person from an electrical and telecommunications manufacturer or distributor; one person with knowledge of the electrical industry, but not related to the electrical industry, to represent the public; one telecommunications worker; one licensed professional electrical engineer qualified to do business in the state (designated as a registered communications distribution designer); and a building official from an incorporated city or town with an electrical inspection program who serves as a nonvoting member. RCW 19.28.311.
And it can certainly be argued that many in this group will benefit generally from electrical work denied to general contractors. But it is also true, as we have noted, that electrical contractors and electricians alone have the necessary technical expertise to pass upon what qualifies as electrical work. This advances a goal articulated in the statuteto "assure proper safety and protection for the general public." Former RCW 19.28.123 (1996).
Moreover, there is no showing here that any of these board members had a direct financial interest adverse to Mr. Magula's specific business dealings. So for us to tell the Governor who he should or should not appoint to this board would be an unwarranted encroachment on executive authority. See, e.g., Zylstra v. Piva, 85 Wash.2d 743, 754, 539 P.2d 823 (1975) (Utter, J., concurring) (commenting on court's refusal to interfere with the executive branch of the government on the principle of separation of powers).
The test for an appearance of fairness violation in this case is "whether a reasonably prudent and disinterested observer would conclude that [Mr. Magula] did not obtain a fair, impartial and neutral hearing." See Haynes, 100 Wash.App. at 377, 996 P.2d 637. He did.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules *358 governing unpublished opinions. RCW 2.06.040.
We concur: KATO, A.C.J., and KURTZ, J.
NOTES
[1] Since the events relevant to this case occurred, the majority of the sections in chapter 19.28 RCW have been recodified. See Laws of 2000, ch. 238.
[2] See, e.g., former RCW 19.28.010(1) (1993) (requiring that all wire installations conform with "approved methods of construction for safety to life and property"); former RCW 19.28.123 (1996) (directing electrical board to conduct examinations for licenses "to assure proper safety and protection for the general public").
[3] See RCW 19.28.311 (requiring that three board members be licensed electrical contractors and that there be three certified electricians).