# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| COLLEEN M. ALDRIDGE, | No. 55489-5-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondents. | |

VELJACIC, J. — Colleen Aldridge applied for a workers' compensation claim for neck pain diagnosed as cervical strain/sprain. The Department of Labor and Industries (Department) agreed the disease was work related and compensated the claim. But prior to the Department accepting her claim for a cervical strain/sprain, Aldridge underwent surgery for a separate condition called degenerative disc disease. She requested the Department pay for that surgery under her claim for cervical strain/sprain, but it withheld payment. Aldridge appealed to the Board of Industrial Insurance Appeals (Board), which concluded that her surgery was not compensable under her cervical strain/sprain claim. Aldridge appealed to the superior court, which affirmed the Board's findings and conclusions.

Aldridge appeals, arguing that the Board violated the appearance of fairness doctrine by ordering security be present because her husband, who represented her before the Board, is Black. She also argues the Board failed to certify all of its records and that the superior court erred by

failing to take additional testimony. Lastly, she argues that the superior court erred in affirming the Board's findings and conclusions.

The Department argues that there was no security present during proceedings for Aldridge's appeal, therefore her appearance of fairness doctrine claim fails. It also argues that under the statutes and regulations addressing the Board record on appeal, Aldridge failed to follow the procedures to add documents to the record and failed to request the superior court order the Board to include additional materials in its record.

We conclude that the Board did not violate the appearance of fairness doctrine and neither the Board nor the superior court prohibited Aldridge from supplementing the record. We affirm the superior court.

## FACTS

In 2009, Aldridge suffered from neck pain and went to see Dr. Thomas Young.[1] He diagnosed her with a cervical strain/sprain. Aldridge applied for workers' compensation and eventually she and the Department entered into an agreement accepting her claim for the cervical strain/sprain. Prior to this agreement, Aldridge underwent surgery to address degenerative disc disease.

Aldridge sought compensation for the surgery performed by Dr. Daniel Nehls under her claim for cervical strain/sprain. The Department withheld payment, which it informed Aldridge of via a remittance advice.[2] Aldridge appealed to the Board, and after some delay during which the Department was reconsidering its decision, the Department adhered to its previous position

---

[1] Dr. Young has a chiropractic and naturopathic doctorate but did not attend medical school.

[2] The Department issued a few remittance advices, the one Aldridge appeals here, which denied compensation for her 2010 surgery is "#487012," dated August 4, 2012 with a warrant date of August 7, 2012. *See* Administrative Record (AR) 63.

2

and again withheld payment. Aldridge appealed the Department's refusal to pay for her 2010 surgery, arguing that her surgery was a necessary and proper treatment for her cervical strain/sprain.

During her appeal, Aldridge repeatedly requested that the Board address the presence of security, an issue that arose in a prior case involving Aldridge's husband, M. Wayne Aldridge. In M. Wayne Aldridge's case, the Board ordered security be present during his appeal after M. Wayne Aldridge had obtained personal information about a Department attorney and an Industrial Appeal Judge (IAJ). *See Aldridge v. Dep't of Labor & Indust.*, No. 49725-5-II, slip op. 3-6 (Wash. Ct. App. May 8, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049725-5-II%20Unpublished%20Opinion.pdf. M. Wayne Aldridge alleged the Board's decision was due to his being a Black man. *Id*. at 5. He prevailed at the board, but appealed to the superior court and to this court. This court concluded that because M. Wayne. Aldridge prevailed, he was not an aggrieved party and could not appeal. *Id*. at 14. This court also concluded that because the Board did not discuss the issue of security, the question was not passed upon by the department and therefore we did not have jurisdiction to consider the security issue. *Id*. at 14-15.

In Aldridge's case before us here, there is no record that security was present. During a scheduling conference on January 31, 2018, the IAJ required that any security requests must be made in writing. Neither the Board nor the Department requested security. Aldridge then requested the Board assign a pro tem IAJ unassociated with the Board. She asserted that the Board was incapable of rendering an unbiased decision in her appeal due to racial bias evidenced by the presence of security during her husband's case. The Board denied her request.

Before the IAJ, two experts testified regarding Aldridge's condition and surgery. Dr. Young, who treated Aldridge in 2009, testified that the conditions she presented with were work

3

related. He testified that Aldridge had "preexisting degenerative changes" and that such condition would have remained quiet but for Aldridge's work at a non-ergonomic workstation. Administrative Record (AR) at 424. He diagnosed Aldridge with cervical and thoracic sprain/strain and stated that her condition was not due to a specific incident. Dr. Young also testified that she had never been treated for such condition before. He did not think surgery was necessary to treat her condition.

Dr. Dennis Stumpp, testifying for the Department, conducted a record review of Aldridge's claim and concluded that the degenerative disc disease and associated surgery was unrelated to the compensated cervical strain/sprain. He explained that MRIs of Aldridge's spine in 2004 and 2007 showed deterioration of her C6-7 vertebrae. He went on to explain that cervical strains/sprains occur in ligaments and muscles, whereas cervical disc disease occurs in the discs between vertebrae. Aldridge's surgery occurred on her C6-7 disc. Dr. Stumpp also testified that degenerative disc disease is not work related and is unassociated with specific professions or movements.

The IAJ issued a proposed decision and order (PD&O) affirming the Department's decision withholding payment for the June 10, 2010 surgery. It relied on Dr. Stumpp's testimony explaining that an MRI in 2004 and 2007 showed that Aldridge's spine showed signs of deterioration. The PD&O stated that Dr. Young's conclusion that Aldridge's condition would have remained quiet was unsupported by the record because MRIs showed deterioration prior to her appointment with him. The IAJ found that Aldridge's cervical strain/sprain was work related, but that her degenerative disc condition was unconnected to that claim and therefore not work related. It also concluded that, her degenerative disc condition was ongoing and continued to progress.

4

The IAJ found that "[t]he June 10, 2010 surgery was not necessary and proper treatment for the allowed condition of cervical strain/sprain"; and concluded "[t]he Department remittance advice dated August 4, 2012, is correct, and is affirmed." AR at 22. Aldridge petitioned the Board for additional review, but the Board denied that petition and adopted the IAJ's order.

Aldridge then appealed to the superior court. In an attempt to perfect the record, Aldridge requested that the Board include records in its certified record that had not been submitted into evidence or examined by the Board. The Board informed Aldridge that she would need to seek an order from the superior court to have additional records included in the certified Board record. Later, the superior court asked Aldridge whether she had requested an order from the superior court that would allow her to add to the record. Aldridge stated, "No, I should not have to. They should have provided it [without an order]." Report of Proceedings at 11.

The court also requested Aldridge to cite to Dr. Young's testimony supporting her request for compensation and to what evidence showed the Board acted with racial bias. Aldridge responded by referring to her own brief. The superior court issued an oral ruling affirming the Board's order. It also issued written findings, adopting the Board's findings:

> 1.2.2. Colleen M. Aldridge developed cervical strain/sprain that arose naturally and proximately out of distinctive conditions of employment.
> 1.2.3. Ms. Aldridge suffers from degenerative disk disease in her cervical spine. The distinctive conditions of Ms. Aldridge's employment did not cause or aggravate this condition.
> 1.2.4. On June 10, 2010, Ms. Aldridge underwent C6-7 anterior cervical discectomy and fusion surgery, performed by Dr. Daniel Nehls.
> 1.2.5. The June 10, 2010 surgery was not necessary and proper treatment for the allowed condition of cervical strain/sprain.

Clerk's Papers (CP) at 50. It also adopted the Board's conclusions of law:

> 2.2.2. The June 10, 2010 surgery was not necessary and proper treatment for the allowed condition of cervical strain/sprain.

5

>2.2.3. The Department remittance advice dated August 4, 2012, is correct, and is affirmed.

CP at 51.  Aldridge appeals.

## ANALYSIS

### I.     STANDARD OF REVIEW

We review workers' compensation claims to determine "'whether substantial evidence supports the findings made after the superior court's de novo review, and whether the [superior] court's conclusions of law flow from the findings.'"  *Street v. Weyerhaeuser Co.*, 189 Wn.2d 187, 205, 399 P.3d 1156 (2017) (internal quotation marks omitted) (quoting *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999)).  "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth."  *State v. Pratt*, 11 Wn. App. 2d 450, 457, 454 P.3d 875 (2019).

### II.    APPEARANCE OF FAIRNESS DOCTRINE

Aldridge argues that the Board violated the appearance of fairness doctrine by depriving her of a fair hearing when it ordered security be present in M. Wayne Aldridge's prior worker's compensation case.  She argues that the Board only ordered security because M. Wayne Aldridge is Black.[3]  We disagree.

#### A.     Legal Principles

The appearance of fairness doctrine ensures that proceedings before administrative tribunals are fair and impartial.  *Nationscapital Mortg. Corp. v. Dept. of Fin. Inst.*, 133 Wn. App.

---

[3] Aldridge also argues that the Board's refusal to conduct a hearing on whether security should be present in her appeal, despite there being no security request in her case, violated her rights of due process and equal protection.  She provides no authority or analysis to support that claim, and therefore we refuse to address it.  *See Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

723, 758, 137 P.3d 78 (2006). Under the doctrine, proceedings are valid if "'a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.'" *Id*. at 758-59 (quoting *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 478, 663 P.2d 457 (1983)). The party challenging a proceeding must provide evidence of actual or potential bias. *Id*. at 759. The party cannot satisfy their burden by merely speculating about potential bias. *Magula v. Dep't of Labor & Indus.*, 116 Wn. App. 966, 972, 69 P.3d 354 (2003). We presume that that public officers properly and lawfully perform their duties. *Id*.

> B. Analysis

We conclude that because Aldridge failed to provide evidence showing the Board was biased, it therefore did not violate the appearance of fairness doctrine. Aldridge argues that the Board ordered security be present when M. Wayne Aldridge appeared before it due to racial bias against M. Wayne Aldridge and that the bias necessarily flows to her because she is his wife. But the record does not support that claim. In the present case, no security was requested and therefore the Board never conducted a hearing on the issue. Aldridge fails to explain how the presence of security in M. Wayne Aldridge's case affects her case, where no security was present. Aldridge fails to show how the Department's or the Board's actions resulted from bias. She also fails to provide any evidence that bias impacted her case. Because of this, she fails to satisfy her burden to show that the Board violated the appearance of fairness doctrine. *Nationscapital Mortg. Corp.*, 133 Wn. App. at 759.

III.    SUPPLEMENT TO THE BOARD RECORD

Aldridge argues that the trial court should have taken additional testimony in her appeal because she alleged there were irregularities before the Board. She also argues that the Board

failed to include all the materials it considered in the certified Board record. We disagree and hold that Aldridge's claim fails.

### A. Legal Principles

Under WAC 263-12-135, the record in workers' compensation appeals consists of

the order of the department, the notice of appeal therefrom, all orders issued by the board (including litigation orders and judge's report of proceeding), responsive pleadings, if any, and notices of appearances, and any other written applications, motions, stipulations or requests duly filed by any party. Such record shall also include all depositions, the transcript of testimony and other proceedings at the hearing, together with all exhibits offered. *No part of the department's record or other documents shall be made part of the record of the board unless offered in evidence.*

(Emphasis added.) A mere reference to records is insufficient, records must be offered into evidence for the Board to consider them and to be considered part of the record. *Boyd v. City of Olympia*, 1 Wn. App. 2d 17, 35, 403 P.3d 956 (2017).

If the claimant appeals a Board's decision to the superior court, the record in such court consists of the certified Board record. RCW 51.52.115. RCW 51.52.115 allows the trial court to take testimony not included in the Board record when the appealing party alleges "irregularities in the procedure before the board." That statute also states in relevant part, "Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board." RCW 51.52.115. Therefore, the superior court generally only reviews the certified Board record when a claimant appeals unless the claimant alleges irregularities and requests additional testimony. *See Hendrickson v. Dept. of Labor & Indus.*, 2 Wn. App. 2d 343, 351, 409 P.3d 1162 (2018).

B.     Analysis

We reject Aldridge's argument that the Board and superior court erred by failing to provide or consider additional material.  Aldridge cites to both RCW 51.52.115 and WAC 263-12-135 to support her argument that the Board erred in refusing to include additional material in its certified record to the superior court and that the court failed to take additional testimony.  However, Aldridge never sought to introduce the materials she references during her appeals, and only referenced them in her briefs.  *See Boyd*, 1 Wn. App. 2d at 35.  Aldridge also admitted to the superior court that she had not asked it to order the Board to provide any additional materials.  We reject Aldridge's arguments

In the same section addressing the record, Aldridge also argues that the Department's delay in providing her its remittance order requires us to reverse the trial court's decision.  Aldridge cites to *McKinlay d/b/a Patsy's Progressive Pre-School v. Department of Social and Health Services*, 51 Wn. App. 491, 497, 754 P.2d 143 (1988), for the proposition that due process mandates access to the courts without unnecessary delay.  But *McKinlay* does not support her argument, and that case says nothing about how we evaluate accusations of delay in a workers' compensation case.  Aldridge refers to the Department's delay in providing her a final remittance decision, which she argues limited the medical evidence she was able to present due to it being archived.  However, she fails to say how that evidence would support her claim nor did she provide any evidence showing why it was inaccessible.  We reject her delay claim.

IV.     OCCUPATIONAL DISEASE CLAIM

Aldridge argues that the superior court erred in findings of fact 1.2.3 and 1.2.5 because the Board was not impartial in its decision.  She also argues that conclusion of law 2 is unsupported by the facts.  We affirm the superior court's findings and conclusions.

9

A. Legal Principles

The Industrial Insurance Act (IIA), Title 51 RCW, guarantees compensation for workers injured or suffering from occupational disease resulting from their employment. RCW 51.32.010; RCW 51.32.180; *Ma'ae v. Dep't of Labor & Indus.*, 8 Wn. App. 2d 189, 199, 438 P.3d 148 (2019); *Street*, 189 Wn.2d at 193-94. Under RCW 51.32.180, workers "who suffer[] disability from an occupational disease in the course of employment" are entitled to "the same compensation benefits" as injured workers. An occupational disease "arises naturally and proximately out of employment." RCW 51.08.140; *Street*, 189 Wn.2d at 194. Under RCW 51.08.140, a claimant must produce evidence showing that employment proximately caused such disease and would not have occurred but for employment. *Street*, 189 Wn.2d at 194.

A claimant may appeal the Department's decision to the Board. RCW 51.52.050(2)(a). The claimant carries the burden of providing sufficient evidence "to establish a prima facie case for the relief sought in such appeal." RCW 51.52.050(2)(a). The Board reviews an appeal from the Department's decision de novo. RCW 51.52.100; *Coaker v. Dep't of Labor & Indus.*, 16 Wn. App. 2d 923, 930, 484 P.3d 1265, *review denied*, 198 Wn.2d 1020 (2021). A claimant may appeal adverse decisions of the Board to the superior court. RCW 51.52.110.

B. Analysis

We conclude that the superior court's findings of fact are supported by substantial evidence and that its conclusions of law flow from such findings. Aldridge first challenges finding of fact 1.2.3, which states that her degenerative disc disease was not caused or aggravated by her work. Her only argument to support her claim is that the Board was not impartial.

We conclude that finding of fact 1.2.3 is supported by substantial evidence. Dr. Stumpp's testimony established that Aldridge suffered from degenerative disc disease that had been

progressing for years. He also stated that such condition is not associated with specific work or movement. Dr. Stumpp's testimony is sufficient to convince a fair-minded, rational person that Aldridge's degenerative disc disease was not caused or aggravated by her work.

Next, Aldridge challenges finding of fact 1.2.5, which states that her 2010 surgery was not a necessary and proper treatment for cervical strain/sprain. Again, her only argument to support her claim is that the Board was not impartial. We conclude finding of fact 1.2.5 is supported by substantial evidence. Dr. Stumpp testified that Aldridge's degenerative disc disease was unrelated to her cervical strain/sprain, stating that a strain involves muscles and ligaments while degenerative disc disease involves the discs between vertebrae. Finding of fact 1.2.5 is supported by substantial evidence, because Dr. Stumpp's testimony is sufficient to convince a fair-minded, rational person that Aldridge's surgery was not treatment for her cervical strain/sprain claim.

Aldridge also argues that the superior court erred in conclusion of law 2.2.3, which states the Department's remittance advice was correct. Aldridge carries the burden of establishing a prima facie case that her surgery was necessary and proper treatment for her cervical strain/sprain. *See* RCW 51.52.050(2)(a). Dr. Young failed to testify that her 2010 surgery was a treatment for her claim. Dr. Stumpp testified that the surgery was not treatment for a cervical strain/sprain. The superior court first found that the surgery was not treatment for Aldridge's cervical strain/sprain and that her cervical disc degeneration was not work related. The superior court's conclusion of law 2.2.3 flows from such findings, because it relied on them to conclude that the Department's remittance advice was correct for denying compensation for surgery to treat degenerative disc disease under her cervical strain/sprain claim. We conclude conclusion of law 2.2.3 flows from the findings and affirm the superior court.

11

55489-5-II

V.  ATTORNEY FEES

Aldridge argues that under RCW 51.52.130, she is entitled to attorney fees.  RCW 51.52.130 allows a worker's attorney to receive fees if an appellate court reverses an order or decision of the Board.  We conclude Aldridge is not entitled to fees because neither the superior court nor this court altered an order or decision of the Board.

CONCLUSION

We conclude that the Board did not violate the appearance of fairness doctrine, that neither the Board nor the superior court prohibited Aldridge from supplementing the record, and affirm the superior court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.

12